**In re John J. STANTON, Petitioner.**

**No. 98–BG–1940.**

District of Columbia Court of Appeals.

Argued Dec. 6, 1999.
Decided Aug. 10, 2000.

John J. Stanton, petitioner, pro se.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, was on the brief, for respondent, the Office of Bar Counsel.

Before STEADMAN, FARRELL and RUIZ, Associate Judges.

PER CURIAM:

Petitioner was suspended from practicing law in the District of Columbia in 1983, in part due to conduct stemming from his view of a lawyer's proper role in assisting clients with guilty pleas.[1] *See In re Stanton,* 470 A.2d 272 (D.C.1983) (*Stanton I*) (366 day suspension); *In re Stanton,* 470 A.2d 281 (D.C.1983) (*Stanton II*), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 821 (1984) (concurrent 60 day suspension). Since that time, petitioner has thrice attempted to establish fitness to resume practice but has each time been de-nied reinstatement due to doubt about his willingness to conform his conduct to the disciplinary rules as interpreted by this court. *See In re Stanton,* 682 A.2d 655 (D.C.1996) (*Stanton V*) (third petition), *cert. denied,* 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997); *In re Stanton,* 589 A.2d 425 (D.C.1991) (*Stanton IV*) (second petition), *cert. denied,* 502 U.S. 1098, 112 S.Ct. 1178, 117 L.Ed.2d 422 (1992); *In re Stanton,* 532 A.2d 95 (D.C.1987) (*Stanton III*) (first petition).[2] Now before us is a fourth petition for reinstatement, dismissed by the Board on Professional Responsibility ("Board") as insufficient on its face, but without prejudice to the filing of a new petition that meets the applicable requirements. We sustain the Board's dismissal.

## I.

The petitioner in a reinstatement case bears the burden of proving by clear and convincing evidence that he or she is fit to resume the practice of law. *See In re Roundtree,* 503 A.2d 1215, 1216 (D.C. 1985); D.C. Bar R. XI, § 16(d). This court outlined five factors critical to the reinstatement decision in *Roundtree, supra:* (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law. *See* 503 A.2d at 1217. With these factors in mind,[3] the Board may dismiss a

---

1. Petitioner asserts that he is being persecuted for his views, but, as we have emphasized repeatedly, our concern lies solely with his ability to act in accordance with our disciplinary rules despite personal disagreement with them. *See In re Pierson,* 690 A.2d 941, 948 (D.C.1997) ("The purpose of imposing sanctions, after all, is not to punish the attorney but to protect the public and the courts, to maintain the integrity of the profession, and to deter other attorneys from engaging in similar misconduct.").

2. Petitioner alleges that this court erred factually in one or more of its previous *Stanton* opinions and demands that we order the Board to investigate this judicial "dishonesty." The court has dealt with any purported errors of law or fact in prior decisions that have been brought to its attention by means of a petition for rehearing filed pursuant to D.C.App. R. 40. Concerns petitioner has about judicial conduct are within the purview of the District of Columbia Commission on Judicial Disabilities and Tenure, D.C.Code §§ 11–1521 to 1530 (1995).

3. Board Rule 9.1 expressly requires that a petition for reinstatement allege "material

petition without a hearing if the petition is "insufficient or defective on its face" as a matter of law. *See* D.C. Bar R. XI, § 16(d). In applying this standard, the Board uses an approach similar to that of a trial court considering summary judgment, *i.e.* it assumes that the petitioner "would be able to establish by clear and convincing evidence all of the material facts set forth in the petition." Board Rule 9.2.

█ Petitioner did not manifest in the instant petition that he recognized the seriousness of the misconduct for which he was disciplined; that is, he did not indicate that he was prepared faithfully to abide by the disciplinary rules applicable to members of the bar, for the breach of which he was sanctioned. If anything, the petition, as well as petitioner's exceptions to the Board's order and his briefs to this court, indicate that petitioner adamantly believes that he has never engaged in any misconduct. For example, he states, "The history of the disciplinary actions against petitioner is a series of his efforts to comply with the unconstitutional requirement by constitutional means." This statement aptly captures petitioner's inability to accept that, regardless of his personal beliefs, he must conduct himself in accordance with our interpretation of the disciplinary rules as requiring him to fully represent his client, including doing what is necessary to assist (and not to impede) a client who has decided to plead guilty. In light of appellant's failure to make allegations sufficient to satisfy a critical *Roundtree* factor, we must agree

with the Board that the instant petition is insufficient as a matter of law. Moreover, a hearing is not necessary because, as we explained in *Stanton IV*:

> [I]f petitioner's understanding of his ethical duty is exactly the same ... then he has had a full and fair opportunity to offer that understanding in satisfaction of the *Roundtree* standard, and he will not be heard—by a division of the court—to do so again. Otherwise petitioner could continually apply to the court for reinstatement while adhering to an understanding of his obligation which the court has found contrary to the duties imposed by the canons of ethics on an attorney representing a criminal defendant.

*Stanton IV, supra*, 589 A.2d at 426.[4]

In short, as the Board noted in the penultimate paragraph of its dismissal order, "[w]e believe that Petitioner has not yet come to grips with the substance of the misconduct which led to his suspension and to the repeated rejection by the Court and the Board of his efforts to gain reinstatement."

## II.

In addition to contesting dismissal of his fourth petition, petitioner argues that we should vacate or rescind the original 1983 order suspending him because of constitutional infirmities. Principally, petitioner argues that this court should "revisit[ ] its clearly erroneous and manifestly unjust

facts" that "specifically address" the five *Roundtree* requirements.

4. Petitioner contends that the Board's acting without a hearing indicates that we are no longer interested in his achieving " 'compatibility' between [his] philosophical views and the disciplinary rules," but rather demand that he repudiate those views. This is simply not true. The point of a hearing is to explore material issues raised in the petition in more detail. No hearing was necessary here precisely because petitioner failed to raise any issues not already explored.

In reaching our decision, we rely solely on the assertions contained in the petition. Although petitioner suggests that we should also consider his views as expressed at oral argument, the function of oral argument is to explore legal issues and the facts that are of record, not to make factual findings or provide an opportunity for petitioners to supplement deficient petitions. If petitioner's position has significantly changed since he filed the instant petition, then he is of course free to file a new petition in which he addresses the *Roundtree* factors and explains how his position has changed, as the Board's order dismissing this petition plainly permits.

decision to adopt summarily the [Board] recommendation to suspend petitioner from practice for *ex post facto* misconduct."

■ We decline to "revisit" the court's decisions suspending petitioner. The purpose of a reinstatement proceeding is not to reconsider the underlying disciplinary proceeding, but to evaluate the petitioner's "present qualifications and competence" to practice law. *Roundtree, supra,* 503 A.2d at 1218. *See Stanton V, supra,* 682 A.2d at 657 n. 4 ("we will not revisit the disciplinary proceeding in this reinstatement case"). Petitioner's constitutional arguments are clearly barred by *res judicata* and prior rulings of this court. *See Stanton III, supra,* 532 A.2d at 96 ("petitioner is precluded from challenging the constitutionality of the earlier disciplinary proceedings and dispositions of this court"); *see also Patton v. Klein,* 746 A.2d 866, 870 (D.C.1999) (stating that the doctrine of res judicata "operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised"). By adopting the Board's recommendation, this court rejected petitioner's constitutional arguments. *See Stanton II, supra,* 470 A.2d at 287–88; *see also id.* at 282 n. 2 ("We also agree with the Board that respondent's contentions concerning certain improprieties in the conduct of his disciplinary proceedings are similarly without merit."). Another panel of this court having addressed and rejected petitioner's arguments, we are not at liberty to consider them anew. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

■ We have no difficulty, however, explicating why the court summarily rejected his constitutional arguments. When petitioner refers to suspension for *ex post facto* misconduct, we understand him to reference his argument in the original disciplinary proceedings based on *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).[5] In his brief to the court in *Stanton II,* quoting *Ruffalo,* petitioner argued that a court should not "deprive an attorney of the opportunity to practice his profession on the basis of a determination *after the fact* that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct." *Id.* at 556, 88 S.Ct. 1222 (emphasis added). Whatever the subjective good faith of petitioner's beliefs, he simply cannot have maintained an objectively founded view that in representing a criminal defendant who desires to plead guilty, "he is entitled actively to attempt to thwart [the] client's desires ... or to stand by and allow his client to flounder without his assistance...." *Stanton I, supra,* 470 A.2d at 278. Application of the disciplinary rules to prohibit this manner of deliberate neglect of a client's lawful objectives presents no colorable due process issue.

■ We similarly rejected petitioner's unsupported assertion that our interpretation of the disciplinary rules as they pertain to assisting clients with guilty pleas violates both the attorney's First Amendment right to freedom of expression and the client's Fifth Amendment right against involuntary self-incrimination. Once a lawyer undertakes to represent a client, Rule 1.3 of the Rules of Professional Conduct, like DR 7–101(A)(1) of the Code of Professional Responsibility before it, requires the lawyer to represent the client "zealously," and prohibits the lawyer from failing to "seek the lawful objectives of [the] client." These obligations to the client override the lawyer's First Amendment interests where the lawyer is expected to give voice in court to the client's decision to plead guilty, not to express his or her own opinion. For the same reason,

---

5. We note that the doctrine of *ex post facto* application of law, to the extent petitioner relies on it, by itself does not pertain to attorney discipline, which is not punitive. *See,* *e.g., Carmell v. Texas,* —— U.S. ——, 120 S.Ct. 1620, 1627–29, 146 L.Ed.2d 577 (2000) (defining doctrine).

there is no violation of the client's Fifth Amendment privilege once the client, after receiving advice, has chosen to plead guilty. What the rules require is that petitioner advocate for *his client's decision* to plead guilty, not for guilty pleas generally, which the lawyer might find objectionable.

Petitioner also challenged the deference we give to the Board's factual findings and recommendations. *See, e.g., In re Fogel,* 679 A.2d 1052, 1054 (D.C.1996) ("Although the ultimate decision on whether an attorney is reinstated is ours alone, the Board's findings or recommendations in this regard are entitled to great weight.") (citation omitted); *In re James,* 452 A.2d 163, 169 (D.C.1982) ("Our consideration of Board findings and recommendations is similar to our review of administrative agency decisions."), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983). Petitioner argues that giving the Board deference similar to that given administrative agencies is constitutionally infirm because Board proceedings do not offer the same procedural protections as administrative agency proceedings.

As explained in the Preamble to the Bar Rules, this court created the Board in the exercise of its inherent authority over members of the legal profession practicing in the District. *See also* D.C.Code § 11–2501(a) (giving this court statutory authority to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension, and expulsion"). One of the functions of the Board is to conduct the fact-finding necessary to our evaluation of disciplinary matters. *See* D.C. Bar R. XI, § 4(e). While it is true that the Board does not follow the same procedures as District administrative agencies, the Board is not an administrative agency and therefore not governed by the Administrative Procedure Act (APA), D.C.Code §§ 1–1501 to 1542 (1999). Ignoring this fact, and citing no authority, petitioner nonetheless contended that we are constitutionally required to fashion Board procedural rules after the APA, or else conduct fact-findings *de novo.*[6] Finding no basis for this contention, we rejected petitioner's argument.

The Board's order dismissing the petition for reinstatement is

*Sustained.*

---

**6.** We note that the United States District Court for the District of Columbia recently stated in *Stanton v. District of Columbia Court of Appeals,* No. 95–1952 (D.D.C. April 28, 1999), that it found nothing to suggest that this court gives undue deference to the Board.