**In re Michael X. MORRELL,**
**Respondent.**

No. 03–BG–1273.

District of Columbia Court of Appeals.

Argued Sept. 9, 2004.

Decided Oct. 7, 2004.

David Epstein, for respondent.

Julia L. Porter, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before TERRY, REID and WASHINGTON, Associate Judges.

REID, Associate Judge:

Respondent Michael X. Morrell was disbarred in Fall 1996 for violations of the District of Columbia Code of Professional

Responsibility, including "dishonest, deceitful or fraudulent conduct," "illegal acts involving moral turpitude," and "misappropriation of client funds"; we previously detailed the factual underpinnings of these violations. *See In re Morrell,* 684 A.2d 361, 362–65 (D.C.1996) (*Morrell I*). Mr. Morrell applied for reinstatement to the bar on April 15, 2003. He challenges the Board on Professional Responsibility's ("Board") dismissal of his petition for reinstatement. We hold that the Board properly dismissed Mr. Morrell's petition for reinstatement because it was insufficient on its face as to two "material facts" required to be addressed by the petitioner with clear and convincing evidence.

## FACTUAL SUMMARY

On April 15, 2003, Mr. Morrell filed a petition for reinstatement to the District of Columbia Bar following his disbarment in Fall 1996. He submitted a questionnaire which provided basic background information, discussed the matter for which he was disciplined, and addressed five categories of information or "material facts." The Board's questionnaire instructions specified the following "material facts":

(1) the nature and circumstances of the misconduct for which the petitioner was disbarred or suspended;

(2) petitioner's recognition of the seriousness of such conduct;

(3) petitioner's conduct during period of disbarment or suspension, including

(4) petitioner's present character;

(5) petitioner's present qualifications and competence to practice law.[1]

Mr. Morrell attached to his petition tax returns for the years 1996 to 2001.

Bar Counsel filed a motion to dismiss the petition for reinstatement on June 2, 2003, because of Mr. Morrell's "failure to pay any restitution to the victims of his fraud and theft following his disbarment." Mr. Morrell's former law firm, Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), paid $3.2 million to a French pharmaceutical company, Laboratories Besins Iscovesco ("Lab Besins") and its American affiliate, LaSalle Laboratories, Inc. ("LaSalle") as a result of Mr. Morrell's misconduct. In his petition for reinstatement, Mr. Morrell asserted that "Lab Besins and LaSalle were fully recompensed," that "in his settlement with LaSalle, [he] made a financial payment and transferred stock with value to LaSalle," and that in Akin Gump's lawsuit against him, the trial court "granted a Motion for Summary Judgment in [his] favor ... [and] dismissed the complaint."[2] Mr. Morrell's petition further pointed out that neither the Hearing Committee, nor the Board, nor the trial court had imposed a requirement of restitution or compensation and that no such requirement was imposed by this court, but the petition also acknowledged a footnote in *Morrell I* which reads in pertinent part: We agree with the

---

1. Prior to listing the five categories of material facts to be addressed, instructions to petitioners for reinstatement specified:

   In addition to filing a completed questionnaire, the petitioner must file with the Board Office a petition for reinstatement which shall include a statement of the material facts to be established concerning the petitioner's moral qualifications, competency, and learning in the law, and showing that petitioner's resumption of the practice of law will not be detrimental to the integri-

ty of the bar or to the administration of justice, or subversive of the public interest.

2. Akin Gump claimed indemnification in the amount of approximately $3.2 million and contribution of $1.6 million. The trial court concluded that both Akin Gump and Mr. Morrell had "settled with the purported victim LaSalle" and that "there is no possibility that either alleged joint tortfeasor will ever be found liable to the alleged victim."

Board's observation that, if respondent seeks reinstatement, evidence that respondent's victims have been made whole would be "highly relevant." *Id.* at 372 n. 5. However, Mr. Morrell took the position in his petition that "[t]he clients were the victims," not Akin Gump, and thus he had no obligation to pay anything to Akin Gump.[3]

In opposing Mr. Morrell's reinstatement petition, Bar Counsel declared: "[he] has refused to reimburse [his former law] firm a penny." In fact, Bar Counsel stated, he made only one small, $50,000 payment to LaSalle prior to the commencement of disciplinary proceedings against him. Bar Counsel estimated the amount Mr. Morrell "stole from his clients" to be "no less than $1,635,538.08 . . .," not including "fees and other compensation." And, Bar Counsel asserted that "[h]e continues to retain more than $1.5 million in additional funds that he stole from the clients as well as the double compensation he received" from LaSalle and Akin Gump.

The Board reviewed Mr. Morrell's petition for reinstatement by applying the factors we set forth in *In re Roundtree,* 503 A.2d 1215 (D.C.1985), and other cases, and concluded that Mr. Morrell's failure "to make any attempts at restitution—and his apparent belief that he has no restitutionary obligations because there are no court orders requiring restitution—render his reinstatement petition 'on its face . . . insufficient as a matter of law to support reinstatement.'" The Board stated in part:

The fact that Akin Gump did not obtain a judgment in its civil action or that it may not have a valid cause of action against him, have no bearing here. As evidence of rehabilitation for reinstatement purposes, restitution cannot be bounded by an evaluation of a lawyer's legal liability to his former clients. . . . The fact that Akin Gump did not pursue its claim against him is no evidence that [Mr. Morrell] has remedied his wrongs.

Bar Counsel's motion attaches a Restitution Schedule estimating that [Mr. Morrell] improperly received $1,611,255.54 from his clients. These consist of funds [Mr. Morrell] used for personal expenses, and funds received from LaSalle in excess of the compensation to which LaSalle agreed. [Mr. Morrell], if he chooses to seek reinstatement again, will have an opportunity to dispute this estimate if he disagrees with it. Certainly, he must know better than anyone how much money he misappropriated. [He] will have an opportunity to present information as to his financial capacity and, as in [*In re*] *Hager,* 812 A.2d 904 [D.C.2002], to present a plan for restitution.

## ANALYSIS

Mr. Morrell challenges the Board's conclusion that his petition was insufficient as a matter of law. He maintains that it was sufficient because he provided "comprehensive responses to each and every question posed [on the reinstatement questionnaire] sufficient to satisfy D.C. Bar Rule § 16(d)," and did not practice law for five years.[4] He also complains that the Board

---

3. We explained in our disbarment decision that "[b]ecause of his failure to keep proper records [yet another of Mr. Morrell's violations of the Code of Professional Responsibility], it is impossible to determine at this point precisely how much he stole." *Morrell I, supra,* 684 A.2d at 365.

4. D.C. Bar R. XI, § 16(d) provides in pertinent part:

A petition for reinstatement by a disbarred attorney or an attorney suspended for misconduct rather than for disability and required to provide proof of rehabilitation shall be filed with the Board. If the attor-

has now made restitution a condition of his reinstatement contrary to *Roundtree, supra*, even though it did not do so when he was recommended for disbarment; nor did this court impose such a condition. Furthermore, he argues that this court's reference to "victims" in *Morrell I* does not include his former law firm, Akin Gump, but is limited to the firm's clients, and that those "clients were made whole both by a payment from [himself] pursuant to a settlement in litigation and by payments from [his former law firm], Akin Gump."

Bar Counsel, in support of the Board's order, stresses this court's footnote five in *Morrell I*, indicating "that evidence of restitution would be 'highly relevant' in a reinstatement proceeding," and takes the position that he "should not be eligible for reinstatement given his failure following his disbarment to pay restitution to the victims of his fraud and theft." Bar Counsel argues that "the gravity of [Mr. Morrell's] misconduct and the fact that it is so closely bound with [his] role and responsibility as an attorney 'heightens the seriousness of [this court's] scrutiny of the other factors bearing on the reinstatement issue.'" Furthermore, his failure to compensate his victims, including Akin Gump, demonstrates that he fails to "recognize[ ] the seriousness of his misconduct" and has not "taken steps to remedy his past." Consequently, his reinstatement would be "detrimental to the integrity and standing of the Bar, or the administration of justice, or subversive to the public interest." Bar Counsel maintains that Akin Gump's lack of success against Mr. Morrell in a civil suit is not a bar to the respondent's "ethical and moral obligations to make restitution."

At the outset it is important to articulate the precise issue before the court. The issue is not whether Mr. Morrell is entitled to reinstatement on the merits of his case, nor is it whether Mr. Morrell must pay restitution. Rather, the questions we must answer are (1) whether Mr. Morrell has satisfied the specifications for a proper petition for reinstatement as they are set forth in D.C. Bar R. XI, § 16(d) and in Board Rule 9.1; and (2) whether the Board's dismissal of Mr. Morrell's petition for reinstatement prior to any review by a hearing committee was proper, because the petition was insufficient or defective on its face. Our review of these issues is *de novo* since they involve questions of law. *See In re Fair*, 780 A.2d 1106, 1110–11 (D.C.2001) (citations omitted).

In *In re Stanton*, 757 A.2d 87 (D.C. 2000), we said that "[i]n applying this ['insufficient or defective on its face'] standard, the Board uses an approach similar to that of a trial court considering summary judgment, *i.e.* it assumes that the petitioner 'would be able to establish by clear and convincing evidence all of the material facts set forth in the petition.'" *Id.* at 89 (citing Board Rule 9.2).[5] Board

---

ney is not eligible for reinstatement, or if the Board determines that the petition is insufficient or defective on its face, the Board may dismiss the petition; otherwise it shall refer the petition to a Hearing Committee. The Executive Attorney shall promptly schedule a hearing at which the attorney seeking reinstatement shall have the burden of proof by clear and convincing evidence. Such proof shall establish:

(1) That the attorney has the moral qualifications, competency, and learning in law required for readmission; and

(2) That the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest....

5. Board Rule 9.2 provides in pertinent part: "On a motion filed by Bar Counsel within the time permitted for its answer to the petition, or sua sponte, the Board may dismiss any

Rule 9.1 provides instructions concerning what the petition for reinstatement must include and states in relevant part:

> The petition shall be accompanied by a full and complete response to the Reinstatement Questionnaire available from the Board Office. No petition will be accepted by the Board Office unless accompanied by such response.
>
> (a) *Reinstatement After Misconduct.* The petition for reinstatement of an attorney who has been disbarred or suspended for misconduct shall include a simple narrative statement of the alleged material facts to be established by clear and convincing evidence concerning petitioner's moral qualifications, competency, and learning in law required for readmission, as well as the material facts showing the petitioner's resumption of the practice of law will not be detrimental to the integrity of the Bar, or to the administration of justice, or subversive of the public interest. Such material facts shall specifically address: (i) the nature and circumstances of the misconduct for which petitioner was disciplined; (ii) petitioner's recognition of the seriousness of such misconduct; (iii) petitioner's post-discipline conduct, including steps taken to remedy past wrongs and prevent future ones; (iv) petitioner's present character; and (v) petitioner's present qualifications and competence to practice law.

It is evident that the Board's instructions to petitioners for reinstatement and its Rules 9.1 and 9.2 are consistent with D.C. Bar R. XI, § 16(d).

D.C. Bar R. XI, § 16(d) and Board Rule 9.1 and 9.2 provide notice to applicants for reinstatement concerning how to avoid dismissal of a petition, and guidance to the Board regarding its authority to dismiss a petition without sending it to a Hearing Committee for review. Petitions must set forth "material facts" that demonstrate both the moral integrity and the competence of an attorney, reflected in part by his or her legal education and background in the law. Petitions also must include a showing that if an attorney is reinstated to the practice of law, it will not be "detrimental to the integrity, of the bar or to the administration of justice, or subversive of the public interest." But a petition for reinstatement must do more than merely discuss these broad areas. It must contain clear and convincing evidence of the five specific material factors identified in D.C. Bar R. XI, § 16(d)(1) and (2), as interpreted in Board Rule 9.1(a)(i) through (v). These factors were first explained in our decision in *In re Roundtree,* 503 A.2d 1215 (D.C.1985). We stated there that "[t]he burden of proof in a reinstatement case is on the petitioner to demonstrate by clear and convincing evidence that he or she is fit to resume the practice of law." *Id.* at 1216 (citations omitted). We also emphasized the broad areas (moral integrity, competence, etc.) in current Rule XI, § 16(d)(1) and (2) that must be addressed in the petition and "[r]eading the rule in light of the overall purposes of the disciplinary system" identified "five factors" relevant to the reinstatement petition and for which specific information or "material facts" must be submitted: "(1) the nature

petition for reinstatement if ... the petition on its face is insufficient as a matter of law to support reinstatement, after assuming petitioner would be able to establish by clear and convincing evidence all of the material facts set forth in the petition." Although some might think that the proper standard govern-

ing the dismissal of a petition for reinstatement is more akin to that pertaining to the dismissal of a civil complaint under Super. Ct. Civ. R. 12(b)(6), we do not write on a clean slate and thus are bound by the *Stanton* decision. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law." *Roundtree, supra,* 503 A.2d at 1217 (citations omitted). The Board incorporated virtually identical factors in its list of "material facts" that the petition for reinstatement "shall specifically address." *See* Board Rule 9.1(a).[6]

The Board's order dismissing Mr. Morrell's petition for reinstatement focuses mainly on restitution, which was not imposed as a condition of his reinstatement, and hence that order could be interpreted as applying an incorrect legal standard as a basis for dismissing a petition for reinstatement as insufficient or defective on its face. A broader reading of the order, however, shows that the Board characterized the petition as insufficient or defective on its face because Mr. Morrell failed to set forth in his petition clear and convincing evidence on two "material facts"—material fact 2 ("recognizes the seriousness of the misconduct") and material fact 3 (post-discipline "steps taken to remedy past wrongs and prevent future ones"). The characterization of these facts as "material" means that a petition is insufficient

unless it presents clear and convincing evidence as to those facts. Adequate evidence or some evidence is not the standard; the petition must contain clear and convincing evidence as to those facts labeled "material."

Here, Mr. Morrell's petition is insufficient with respect to material facts 2 and 3 of the *Roundtree* factors and Board Rule 9.1(a). Although restitution was not imposed as a condition for reinstatement, in contrast to our more recent order disbarring the respondent in *In re Austin,* No. 02–BG–786 (D.C. September 2, 2004), 858 A.2d 969, 978, 2004 D.C.App. Lexis 432, at *26–27, this court clearly informed Mr. Morrell in *Morrell I* that should he seek reinstatement to the practice of law, "evidence that [his] victims have been made whole would be 'highly relevant.'" *Id.* at 372 n. 5. Such evidence is "material" with respect to his recognition of the seriousness of his misconduct, and as a reflection of steps he has taken to remedy his wrongdoing. Yet, the sections in his petition concerning material facts 2 and 3 fall short of "clear and convincing evidence." Even though he admits that he "violated the fundamental ethical precepts that apply to an attorney-client relationship" and "publicly acknowledge[s][his] wrongdoing," nowhere in the section on "Petitioner's recognition of the seriousness of such misconduct" does Mr. Morrell even acknowledge that Akin Gump paid millions in dam-

---

**6.** There is a slight difference between factor (3) in the Board's instructions on the reinstatement questionnaire submitted by Mr. Morrell and factor (iii) in Board Rule 9.1(a). The words "steps taken to remedy past wrongs and prevent future ones" appear in Board Rule 9(a)(iii) but not in the Board's instructions. The questionnaire instructions state with respect to factor (3): "petitioner's conduct during the period of disbarment or suspension, including (4) petitioner's present character [and] (5) petitioner's present qualifications and competence to practice law."

Factor (iii) in Rule 9.1(a) specifies: "petitioner's post-discipline conduct, including steps taken to remedy past wrongs and prevent future ones," and factors (iv) and (v) reference the "petitioner's present character" and "petitioner's present qualifications and competence to practice law." Mr. Morrell's petition accurately reflects factor (iii) as it is set forth in Board Rule 9(a). If it has not done so already, the Board may wish to revise its reinstatement questionnaire instructions to track verbatim Board Rule 9.1(a)(iii).

ages due to his wrongful and dishonest acts.

Furthermore, in the section of his petition entitled "Petitioner's conduct during period of disbarment ..., including steps taken to remedy past wrongs and prevent future ones," he does not even acknowledge any responsibility for restitution consistent with this court's note 5 in *Morrell I,* nor does he indicate steps he has taken to address the damages his past law firm paid because of his willful, dishonest, and wrongful acts. Rather, he highlights a course in professional responsibility that he took at the Georgetown University Law Center, and lists his volunteer work at the Missionaries of Charity, Georgetown University, and the John F. Kennedy Center for the Performing Arts. Significantly, earlier in his petition, he steadfastly maintained that Akin Gump was not a victim and therefore he had no obligation to pay anything to the firm as a result of his malfeasance, including theft, and the millions of dollars in damages the firm paid out because of his misconduct. But the law firm which employed him and initially trusted his moral character as well as his integrity also was a victim. When Mr. Morrell violated the law firm's trust, Akin Gump became just as much a victim as the firm's clients from whom Mr. Morrell "stole," *Morrell I* at 365, substantial sums of money that the firm had to reimburse to the clients. Therefore his belief, expressed clearly in his petition at page 25 after his citation to note 5 in *Morrell I,* that the victims "were made whole" and only the clients, Lab Besins and LaSalle were victims, not only fails to satisfy material fact 2 or 3 but also makes his petition insufficient on its face with respect to those factors.

Mr. Morrell complains in essence that Bar Counsel's assertion that he "stole" "no less than $1,635,538.08 ...," not including "fees and other compensation" is unsubstantiated. It is true that on this record and the record in *Morrell I* it has been "impossible to determine ... precisely how much [Mr. Morrell] stole," but as we said in *Morrell I,* this is due to Mr. Morrell's "failure to keep proper records." *Id.* at 365. The fact that the precise amount of Mr. Morrell's illegal and dishonest gain cannot be determined due to his own faulty record keeping does not excuse him from addressing the nexus between his reinstatement and restitution, as well as the materiality and relevance of restitution to the adequacy of his petition for reinstatement. To be sure, the exact nature of the restitution requirement must be established after Mr. Morrell's petition for reinstatement is deemed sufficient on its face, and his petition is referred to a hearing committee for review. His petition cannot be referred to a hearing committee, however, until it includes a statement (1) recognizing his obligation to make restitution to Akin Gump, and the need to determine the amount of that requirement, and (2) expressing a willingness to abide by a plan for restitution. These matters may be determined through the hearing committee process, or through his written agreement with Akin Gump. *See In re Roxborough,* 775 A.2d 1063, 1064 (D.C. 2001); *In re Kerr,* 675 A.2d 59 (D.C.1996).

In short, we hold that the Board properly dismissed Mr. Morrell's petition for reinstatement because that petition was insufficient on its face as to two material facts required to be addressed with clear and convincing evidence by *Roundtree, supra,* and Board Rule 9.1(a). Accordingly, for the foregoing reasons, we affirm the Board's dismissal of Mr. Morrell's petition dated April 15, 2003.

*So ordered.*