*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-BG-0587

IN RE BRUCE A. JOHNSON, JR., RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 445925)

On Report and Recommendation
of the Board on Professional Responsibility

(BDN: 20-BD-020; DDN: 2017-D158, 2018-D337, & 2018-D357)

(Argued February 22, 2024                    Decided August 29, 2024)

*Bruce A. Johnson, Jr.*, pro se.

*Julia L. Porter*, Deputy Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, was on the brief, for Disciplinary Counsel.

Before BECKWITH, MCLEESE, and HOWARD, *Associate Judges*.

PER CURIAM: Disciplinary Counsel charged respondent Bruce A. Johnson, Jr. with numerous violations of the District of Columbia Rules of Professional Conduct, including reckless misappropriation of entrusted funds. A Hearing Committee concluded that Mr. Johnson had committed most but not all of the charged violations. In particular, the Hearing Committee concluded that Mr. Johnson had

misappropriated entrusted funds negligently rather than recklessly. The Hearing Committee recommended that Mr. Johnson be suspended for sixteen months.

The Board on Professional Responsibility concluded that Mr. Johnson committed many of the charged violations, but the Board concluded that Mr. Johnson's misappropriation was reckless rather than merely negligent. The presumptive sanction for reckless misappropriation is disbarment, *In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc), and the Board recommended that sanction.

We conclude that Mr. Johnson committed reckless misappropriation and we adopt the Board's recommended sanction of disbarment.

## I. Factual and Procedural Background

The charges against Mr. Johnson arose from three separate matters. In the first two matters, the Board concluded that Mr. Johnson failed to provide a written retainer agreement to clients, in violation of D.C. R. Pro. Conduct 1.5(b); failed to keep and preserve complete records of entrusted client funds, in violation of D.C. R. Pro. Conduct 1.15(a) and (e); and, upon termination of his representation, failed to refund unearned advance fee payments and to timely surrender client papers and property, in violation of D.C. R. Pro. Conduct 1.16(d). Mr. Johnson contests those conclusions in this court.

In the third matter, which we will refer to as the misappropriation matter, the Board concluded that Mr. Johnson failed to keep and preserve complete records of entrusted funds, in violation of D.C. R. Pro. Conduct 1.15(a); recklessly misappropriated entrusted client funds, in violation of D.C. R. Pro. Conduct 1.15(a) and 1.15(e); knowingly failed to respond reasonably to a lawful demand for information from Disciplinary Counsel, in violation of D.C. R. Pro. Conduct 8.1(d); and engaged in conduct seriously interfering with the administration of justice, in violation of D.C. R. Pro. Conduct 8.4(d).

In light of our conclusion that Mr. Johnson committed reckless misappropriation requiring disbarment, we need not decide whether Mr. Johnson also committed other violations. *See, e.g.*, *In re Doman*, 314 A.3d 1219, 1224 (D.C. 2024) (per curiam) (declining to decide whether other violations were proven where "the answer to that question would not affect the sanction we impose"). Also, Mr. Johnson does not dispute in this court that he misappropriated entrusted funds, instead arguing only that his misappropriation was negligent rather than reckless. We therefore focus our discussion in this opinion solely on the question whether Mr. Johnson engaged in reckless misappropriation requiring disbarment.

## A. Proceedings before the Hearing Committee

The following evidence was presented to the Hearing Committee with respect to the misappropriation matter.

Mr. Johnson is the only principal of his law firm and the only signatory on the firm's trust account. From January 2015 through February 2019, Mr. Johnson used a credit-card-payment processing company to facilitate client payments via credit card into the trust account. The company charged the trust account a percentage of each credit-card transaction that was processed into the account, and the company also charged an annual fee. Mr. Johnson also accepted payment of client fees with American Express credit cards. American Express charged the trust account a monthly fee as well as a percentage of each transaction that was processed into the account. These credit-card processing fees totaled hundreds of, and sometimes over one thousand, dollars a month.

Mr. Johnson was not aware of the extent to which credit-card payments were being withdrawn from the trust account. Mr. Johnson did not look at the monthly trust-account bank statements, instead giving them unopened to his accountant. There was no checkbook for Mr. Johnson's trust account, and to the extent there may have been a general ledger for the trust account, Mr. Johnson did not consult it.

Mr. Johnson was aware that acceptance of credit-card payments into the trust account and the processing fees deducted from that account created a deficit that required reimbursement. In 2016, Mr. Johnson became aware that his accountant was not reconciling the trust account and that there was a deficit. In October 2016, Mr. Johnson sent the accountant an email stating, "I need to cut a check to replenish the trust account for bounced check fees and credit card costs. Please let me know the amount. Thanks." The accountant did not respond to Mr. Johnson's email and "kind of blew it off." From approximately March 2015 to December 2018, no checks were deposited to reimburse the trust account for the monthly credit-card fees and bank charges that were being deducted. In his testimony before the Hearing Committee, Mr. Johnson acknowledged that he had made a mistake with respect to his supervision of the accountant.

Over $30,000 in credit-card fees was deducted from the trust account from January 2015 through February 2019. In November 2018, Mr. Johnson wrote six checks from the trust account that were returned for insufficient funds. On November 21, 2018, the balance in the trust account was less than $5. In November 2018, Mr. Johnson was supposed to be holding tens of thousands of dollars in the trust account.

In defending himself against the charge of reckless misappropriation, Mr. Johnson testified that he used accounting software and an accountant to assist in the firm's business operations and trust-account reconciliations. When Mr. Johnson changed accountants in 2015, he had his old accountant train the new accountant. Mr. Johnson had no indication that his new accountant did not understand the reconciliation process.

Mr. Johnson testified that the October 2016 email to the accountant was intended to remind the accountant of the accountant's responsibility to replenish the trust account for deducted credit-card fees. Mr. Johnson further testified that he was not aware in October 2016 that there was a deficit in the trust account. Mr. Johnson believed that the accountant was performing trust-account reconciliations, because the accountant told Mr. Johnson, "I got it, it's taken care of, don't worry about it."

After the six checks bounced in 2018, Mr. Johnson used personal funds to replenish the trust account. Mr. Johnson also rehired his old accountant to investigate the trust-account reconciliation issues.

## 1. The Hearing Committee's Recommendation

The Hearing Committee concluded that Disciplinary Counsel had proven by clear and convincing evidence that Mr. Johnson had misappropriated entrusted client funds.

On the issue of sanction, the Hearing Committee found that Mr. Johnson's misappropriation was negligent rather than reckless. The Hearing Committee found several factors weighing in favor of recklessness: Mr. Johnson failed to ensure that the trust account was closely reconciled; he ignored years of problems in the account; and he had ample prior warning of the need to protect the trust account. Mr. Johnson also failed to look at the monthly trust-account statements and "had been inadvertently spending his clients' money for years." The Hearing Committee noted that those actions and omissions displayed a "casual indifference" to protecting entrusted client funds and that Mr. Johnson's misappropriations "could be deemed reckless" because Mr. Johnson knew that the balance in the trust account was insufficient, yet he failed to act.

The Hearing Committee, however, also found several factors weighing in favor of negligence: Mr. Johnson used a computer system to keep track of trust balances; Mr. Johnson employed an accountant; and Disciplinary Counsel did not

charge that Mr. Johnson had a practice of depositing personal funds into the trust account.

The Hearing Committee found the issue to be "very close," because Mr. Johnson's actions were "sloppy in the extreme," and Mr. Johnson "ignored many warning signs that should have caused him to remedy the problems with his trust account."

## B. The Board's Report and Recommendation

The Board adopted the Hearing Committee's pertinent findings of fact with respect to the misappropriation matter. The Board agreed with the Hearing Committee that Disciplinary Counsel had proven that Mr. Johnson misappropriated entrusted funds.

Disagreeing with the Hearing Committee, the Board concluded that Mr. Johnson's misappropriation of funds was reckless, not negligent. In support of that conclusion, the Board explained that Mr. Johnson was on notice by 2016 that the trust account was not properly being reimbursed but Mr. Johnson nevertheless continued to be inattentive to the trust account, did not check account balances or review bank statements, and signed checks without looking at them.

The Board acknowledged that Mr. Johnson had made some efforts to protect client funds, including by hiring an accountant, but concluded that Mr. Johnson's prolonged inattention to the trust account and prolonged failure to supervise his accountant, despite warning signs, was an abdication of responsibility that rose to the level of recklessness.

Having found reckless misappropriation, the Board recommended disbarment.

## II. Analysis

### A. Standard of Review

"Disciplinary Counsel bears the burden of proving intentional or reckless misappropriation—i.e. more than simple negligence—by clear and convincing evidence." *In re Gray*, 224 A.3d 1222, 1228 (D.C. 2020) (per curiam) (internal quotation marks omitted). In considering a recommendation of the Board, this court will defer to the Board's findings of fact if those findings are supported by substantial evidence. *In re Haar*, 270 A.3d 286, 294 (D.C. 2022). Similarly, the Board must accept the Hearing Committee's findings of fact if those findings are supported by substantial evidence. *Gray*, 224 A.3d at 1228. Whether a given set of

facts establishes negligent misappropriation or instead reckless misappropriation is a question of law that this court decides de novo. *Id.*

## B. Misappropriation in General

Misappropriation under D.C. R. Pro. Conduct 1.15 is defined as "any unauthorized use of a client's funds entrusted to the lawyer, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [the lawyer] derives any personal gain or benefit therefrom." *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001) (brackets and internal quotation marks omitted). Misappropriation "occurs whenever the balance in the attorney's operating account falls below the amount due to the client." *Id.* (brackets and internal quotation marks omitted).

The hallmarks of reckless misappropriation include:

> [T]he indiscriminate commingling of entrusted and personal funds; a complete failure to track settlement proceeds; the total disregard of the status of accounts into which entrusted funds were placed, resulting in a repeated overdraft condition; the indiscriminate movement of monies between accounts; and finally the disregard of inquiries concerning the status of funds.

*In re Ahaghotu*, 75 A.3d 251, 256 (D.C. 2013) (internal quotation marks omitted). These hallmarks are not "intended to be an exhaustive list of relevant factors, nor

must all of them be present before conduct resulting in misappropriation can be considered reckless." *Gray*, 224 A.3d at 1231. Reckless misconduct can be established if an attorney's conduct showed "an unacceptable disregard for the safety and welfare of entrusted funds." *Anderson*, 778 A.2d at 338. Negligent misappropriation, on the other hand, is marked by a "good-faith but inadequate effort to comply" with Rule 1.15. *In re Ponds*, 279 A.3d 357, 361 (D.C. 2022) (per curiam). "In making the distinction between negligent and reckless misappropriation, our inquiry focuses on whether the lawyer handled the entrusted funds in a way that suggests the unauthorized use was inadvertent or the result of simple negligence, or in a way that reveals . . . a conscious indifference to the consequences of [the lawyer's] behavior." *In re Cloud*, 939 A.2d 653, 660 (D.C. 2007) (internal quotation marks omitted).

## C.  Misappropriation in This Case

Mr. Johnson concedes that he misappropriated entrusted client funds. He argues, however, that Disciplinary Counsel has not established by clear and convincing evidence that he recklessly misappropriated those funds. Essentially for the reasons stated by the Board, we agree with the Board that Mr. Johnson's misappropriation was reckless.

The conclusion that Mr. Johnson's conduct was reckless finds substantial support in our prior decisions. *See, e.g.*, *Ahaghotu*, 75 A.3d at 253-59 (single instance of misappropriation lasting only one day was reckless, where attorney did not reconcile accounts, had ignored problems with trust account for at least one year before charged misappropriation, and had commingled personal and client funds); *In re Gregory*, 790 A.2d 573, 574-79 (D.C. 2002) (per curiam) (misappropriation was reckless, where attorney "abdicated his responsibility" to non-lawyer assistant and did not check bank records or account balances after being alerted to problems).

Mr. Johnson does not discuss *Gregory*, on which the Board heavily relied. Mr. Johnson does argue that his conduct differs from the conduct at issue in *Ahaghotu*, because (1) unlike Mr. Ahaghotu, Mr. Johnson had not previously been subject to discipline for mismanagement of entrusted funds; (2) Mr. Johnson was not on notice of the issues with his trust account until after Disciplinary Counsel notified him of the six bounced checks in 2018; and (3) Mr. Johnson did not commingle personal and entrusted funds.

We are not persuaded by those points. First, it is true that Mr. Ahaghotu had twice previously been admonished for mishandling of client funds. *Ahaghotu*, 75 A.3d at 254-55. This court did not rely on that fact, however, when determining that Mr. Ahaghotu's conduct in the charged matter was reckless. *Id.* at 256-58. Second,

the Hearing Committee and the Board both found that Mr. Johnson had notice of the lack of reimbursement in 2016, years before the misappropriation. As we explain *infra*, we conclude that the record fully supported those findings. Third, although it is true that Mr. Johnson did not commingle funds, there are other respects in which Mr. Johnson's conduct was more problematic than Mr. Ahaghotu's. Specifically, Mr. Johnson's inattention to the status of the trust account was more protracted and resulted in a very substantial shortfall in the trust account. On balance, we view Mr. Johnson's conduct in this case as showing a degree of recklessness quite comparable to the degree of recklessness shown by the conduct at issue in *Ahaghotu*.

Mr. Johnson argues, however, that his conduct was less serious than conduct that this court found negligent in *In re Robinson*, 74 A.3d 688, 695-96 (D.C. 2013), and *In re Dailey*, 230 A.3d 902 (D.C. 2020) (per curiam). We disagree. In *Robinson*, we concluded that the attorney had engaged in negligent misappropriation where the trust account was overdrawn twice in a period of approximately one month and the attorney failed to take prompt corrective action. *Robinson*, 74 A.3d at 695-96. In *Dailey*, we found negligent misappropriation based on careless recordkeeping and one instance of misappropriation regarding a dishonored trust-account check. *Dailey*, 230 A.3d at 911-12. This case differs from *Robinson* and *Dailey* in a number of respects. Most significantly, neither of those cases involved protracted neglect of

a trust account after notice of problems, and neither involved a shortfall amounting to tens of thousands of dollars.

### 1. Mr. Johnson's Factual Challenges

Mr. Johnson disputes seven findings of fact relevant to the misappropriation issue. First, Mr. Johnson argues that the record does not support the finding that he failed to look at trust-account statements when they were received, instead giving them unopened to his staff. In support of this challenge, Mr. Johnson relies on his own testimony that he gave the statements to his accountant and worked with the accountant if necessary to reconcile the account. The Hearing Committee and the Board were not required to credit Mr. Johnson's testimony on this point. *See In re Wilde*, 299 A.3d 592, 605-06 (D.C. 2023) (Hearing Committee and Board "were not required to accept Ms. Wilde's version of the story," and this court is "required to place great weight on credibility determinations made by the Board and the Hearing Committee because of the Hearing Committee's unique opportunity to observe the witnesses and assess their demeanor.") (internal quotation marks omitted). In any event, Mr. Johnson's testimony that he got involved in reconciling the account "if necessary" did not squarely contradict the finding at issue.

Second, Mr. Johnson challenges the finding that he became aware in 2016 that there was a discrepancy between the amount of funds actually in the trust account

and the amount reflected in his in-house accounting system. Mr. Johnson argues that such a discrepancy would not be unusual, given that checks might not have cleared or might have been in transit. That argument does not directly contradict the finding at issue, but instead relates to the significance of the finding considered in isolation. As we have explained, however, the findings at issue, taken as a whole, establish that Mr. Johnson acted recklessly. Mr. Johnson also argues that he had hired an accountant to handle such discrepancies, and the Hearing Committee found that Mr. Johnson believed that the accountant in fact was doing so. Those arguments too do not directly contradict the finding at issue. Moreover, it does not appear to be accurate that either the Hearing Committee or the Board explicitly credited Mr. Johnson's testimony that he believed in 2016 that the accountant was properly addressing the discrepancy. Rather, the Hearing Committee merely noted that Mr. Johnson had so testified.

Third, Mr. Johnson challenges the finding that he became aware in 2016 that the accountant was not reconciling the trust account. In fact, however, Mr. Johnson admitted to Disciplinary Counsel that he knew that the accountant was not reconciling the trust account, stating: "Much to my chagrin, in 2016 when I checked in with [the accountant] on reconciliation he said he had not been doing it . . . . I verbally told him that reconciliation was required." Although Mr. Johnson cites his own testimony denying that he was aware in 2016 that the accountant was not

reconciling the account, the Hearing Committee and the Board were not required to credit that testimony. *Wilde*, 299 A.3d at 605-06. Moreover, the Hearing Committee and the Board were entitled to give weight to Mr. Johnson's contrary admission to Disciplinary Counsel. *Cf., e.g.*, *Chaabi v. United States*, 544 A.2d 1247, 1248 (D.C. 1988) (admission of party opponent is admissible as substantive evidence).

Fourth, Mr. Johnson challenges the finding that Mr. Johnson specifically knew in 2016 that credit-card costs and bank fees were not being reimbursed. As the Hearing Committee explained, that finding was supported by Mr. Johnson's email telling the accountant that the accountant "need[ed] to cut a check to replenish the trust account for bounced check fees and credit card costs." Mr. Johnson argues that, considered in isolation, that email could have simply been a reminder rather than recognition of a problem that needed to be addressed. That email must be considered, however, in light of the other findings in the case. Taken together, those findings amply support the conclusions that Mr. Johnson was not himself reconciling the trust account or examining bank statements; he was aware in 2016 that his accountant was not reconciling the account; he was aware in 2016 that there was a potential problem with unreimbursed credit-card expenses and bank fees; although he on one occasion directed the accountant to prepare one reimbursement check, no such check was prepared and no reimbursement occurred; he never followed up on

the issue; and the problem persisted for more than two years thereafter, eventually causing a very substantial shortfall in the trust account.

Fifth, Mr. Johnson challenges the finding that no reimbursement checks for credit-card expenses and bank fees were issued from 2015 through 2018. Mr. Johnson's argument, however, is not that this finding was inaccurate, but rather that he was not aware that reimbursement checks were not being issued, because he reasonably believed that the accountant was causing such checks to issue. Because Mr. Johnson was required to sign all checks, it would be quite reasonable to conclude that he at least should have known that no such checks were being issued.

Sixth, Mr. Johnson challenges the finding that he admitted in his testimony that his supervision of the accountant was deficient. Mr. Johnson does not deny that made such an admission, instead apparently seeking to retract the admission and argue that, in fact, his supervision of the accountant was reasonable. The Hearing Committee and the Board, however, were entitled to give weight to Mr. Johnson's admission. *Wilde*, 299 A.3d at 605-06; *Chaabi*, 544 A.2d at 1248.

Finally, Mr. Johnson challenges a finding relating to his interaction with his practice monitor in Maryland. The Board did not rely on that finding, and we do not either. We therefore need not address that issue.

In sum, we are not persuaded that Mr. Johnson's factual challenges provide any basis for this court to disagree with the Board's conclusion that Mr. Johnson's misappropriation was reckless.

## 2. Mr. Johnson's Remaining Arguments

Mr. Johnson more generally challenges the conclusion that his conduct was reckless. In large part, Mr. Johnson's argument rests on his view of the facts. For reasons we have already explained, however, we are not persuaded by Mr. Johnson's challenges to the factual findings of the Hearing Committee and the Board.

Mr. Johnson points out a number of additional considerations that he argues undermine a finding of recklessness: (1) he had hired an accountant; (2) he used a software program for bookkeeping; (3) he has not been subject to prior discipline for trust-account issues; and (4) once the overdrafts occurred in 2018, he took prompt action to address the problem. We agree that the first two considerations provide some support for an argument that Mr. Johnson's conduct was negligent rather than reckless. The third consideration seems neutral rather than affirmatively helpful to Mr. Johnson, and the fourth appears to be factually disputed. In any event, we agree with the Board that the considerations Mr. Johnson relies upon were outweighed by the circumstances that we have previously discussed.

### III. Sanction

"[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *Addams*, 579 A.2d at 191. A sanction less than disbarment is appropriate only in "extraordinary circumstances." *Id.*; *see also In re Hewett*, 11 A.3d 279, 286-90 (D.C. 2011) (highlighting "truly unique" circumstances where intentional misappropriation benefited client by preserving client's Medicaid eligibility). We see no evidence of such extraordinary circumstances here.

Mr. Johnson did not present evidence to support extraordinary circumstances in mitigation before the Hearing Committee or the Board. In his brief before this court, Mr. Johnson argues that he is a sole practitioner with a modest practice and therefore does not have the resources to employ the accounting departments that generally prevent large law firms from facing misappropriation charges. He also argues that no client was ultimately harmed by his misappropriations.

We conclude that Mr. Johnson has not rebutted the presumption of disbarment. This case is not meaningfully different from cases in which this court has held that similar, or even more sympathetic, circumstances were insufficient to rebut the presumption of disbarment applicable to reckless misappropriation. *See,*

*e.g.*, *Gray*, 224 A.3d at 1233-34 (evidence insufficient to rebut presumption of disbarment where attorney was sole practitioner with modest practice, attorney charged below-market fees to low- and moderate-income clients, attorney intended to retire from practice of law, and no client was ultimately harmed).

Finally, Mr. Johnson asks this court to overrule *Addams*'s presumption of disbarment for reckless misappropriation. That argument must be addressed to the en banc court, because a division of the court is bound by our prior holdings. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).

In passing, Disciplinary Counsel asks us to condition Mr. Johnson's reinstatement on making restitution, with interest, for fees he collected but never earned. That issue was not briefed, however, and Disciplinary Counsel has not advised the court of the amount of restitution that would be appropriate. We therefore decline to decide this issue at this time, but we note that the issue can be addressed in the event that Mr. Johnson seeks reinstatement. *See, e.g., In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985) (laying out criteria for reinstatement of disbarred attorney, including "attorney's conduct since discipline was imposed, [such as] the steps taken to remedy past wrongs"); *In re Morrell*, 859 A.2d 644, 649 (D.C. 2004) (evidence of restitution is "material with respect to [disbarred attorney's] recognition of the seriousness of [the attorney's] misconduct, and as a

reflection of steps [the attorney] has taken to remedy [the attorney's] wrongdoing") (internal quotation marks omitted).

Accordingly, it is ordered that Bruce A. Johnson, Jr. be, and hereby is, disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of Mr. Johnson's disbarment shall not begin to run until such time as Mr. Johnson files an adequate affidavit of compliance with D.C. Bar R. XI, § 14(g). *See* D.C. Bar R. XI, § 16(c).

*So ordered.*