Abdollah CHAABI, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1687.

District of Columbia Court of Appeals.

Argued Nov. 10, 1987.

Decided June 30, 1988.

Michele A. Roberts, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Charles M. Steele, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., were on the brief, for appellee.

Before MACK, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

In this case, a devastating extrajudicial admission by appellant was introduced for the first time by the government on rebuttal. The trial court denied appellant any opportunity to explain or deny the admission in surrebuttal. We hold on grounds of evidentiary policy that the trial court erred in so ruling under the circumstances of this case. Therefore, we must reverse and remand for a new trial.

Appellant Chaabi was convicted of second-degree murder in the stabbing death of Kenneth Smith in a barroom brawl arising out of a disputed drug transaction. That Chaabi was responsible for the fatal stab wound was essentially undisputed; his case was bottomed on self-defense. In presenting this defense, Chaabi testified at length about the incident, stating that he wielded the knife solely to defend himself against a group of people rushing at him en masse. In its extensive cross-examination, the government did not question him about any statements he made to his girl friend, Patricia Stanley, subsequent to the incident. But in rebuttal the government called Stanley as a witness, and she testified that several months after the incident Chaabi told her that he pulled the knife because "[h]e just wanted to scare [the decedent] ... to give us back our money." Over the objections of defense counsel, the trial court refused to allow Chaabi to testify on surrebuttal with respect to this damaging admission.

Appellant argues that since the admission was a prior statement which impeached his credibility by contradicting his

self-defense claim, before allowing it into evidence the court should have required the government to lay the predicate foundation for admission of prior inconsistent statements of witnesses. *Beale v. United States,* 465 A.2d 796, 801–02 (D.C.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *McClain v. United States,* 460 A.2d 562, 568–69 (D.C.1983); *United States v. Wright,* 160 U.S.App.D.C. 57, 63, 489 F.2d 1181, 1187 (1973). This foundation requirement would have included bringing the statement to Chaabi's attention during the government's cross-examination, alerting him to the time, place and person to whom he allegedly made it, and allowing him to explain or deny it. *See, e.g., McClain, supra,* 460 A.2d at 568–69. Specifically, Chaabi contends the trial court abused its discretion by not allowing him to testify about the statement on surrebuttal as a means of "remedying" this failure to lay a foundation.

However, the statement was also an admission of a party opponent, and thus admissible not only to impeach, but also as affirmative evidence of the truth of the statement. *See, e.g., Dumas v. United States,* 483 A.2d 301, 303 (D.C.1984); *Powell v. United States,* 414 A.2d 530, 533 (D.C.1980).[1] Thus, in the case at bar, the admission was used as affirmative evidence that appellant acted for reasons other than self-defense. Admissions do not require

foundations, even where, as here, they are also prior inconsistent statements. McCormick on Evidence § 37, at 81 (3d ed. 1984); *Powell, supra; see also* Fed.R.Evid. 613(b) & note 3, *infra.*

Nevertheless, in determining whether the trial court erred in denying Chaabi the opportunity on surrebuttal to deny or explain his admission, we must be mindful of one of the theoretical justifications for treating admissions as hearsay exceptions. With admissions, a usual objection to the use of hearsay—the inability to cross-examine the declarant as opposed to the witness hearing the hearsay—is not present, since the declarant is himself a party to the litigation and therefore "has the full opportunity to put himself on the stand and explain his former assertion." 4 J. Wigmore, Evidence § 1048, at 5 (Chadbourn rev. 1972). "The basis for allowing an admission into evidence is the ability of the party to rebut the testimony, thereby avoiding the danger prevented by the hearsay rule, that is, the inability to cross-examine an out-of-court assertion." *Johns v. Cottom,* 284 A.2d 50, 53 (D.C.1971) (citing 4 J. Wigmore, Evidence § 1048, at 3–4 (3d ed. 1940)); *see also* G. Lilly, Evidence, at 185–86, 193 & n. 4. In other words, the party by presenting his own testimony can, in effect, "cross-examine" himself. *See* 4 J. Wigmore, *supra,* at 4–5.[2] By the same

---

1. We have traditionally considered admissions to be exceptions to the hearsay rule. *See, e.g., Pratt v. District of Columbia,* 407 A.2d 612, 616 (D.C.1979) (agency admissions). The federal rules have removed admissions from the category of hearsay exceptions and instead treat them as nonhearsay under Rule 801(d)(2); and we have more recently adopted the federal formulation, at least with regard to coconspirator admissions. *See Butler v. United States,* 481 A.2d 431, 439 (D.C.1984). *But see District of Columbia v. Washington,* 332 A.2d 347 (D.C.1975) (explicitly refusing to follow nonhearsay terminology of federal rule).

2. This rationale does not alone fully explain the acceptance into evidence of admissions for their substantive truth. First of all, prior statements of non-party witnesses generally are not allowed in substantively even when the witness is subject to cross-examination at trial. *See, e.g., Gordon v. United States,* 466 A.2d 1226 (D.C.1983); *Brooks v. United States,* 448 A.2d 253, 259 (D.C. 1982); 4 Weinstein's Evidence ¶ 801(d)(1)[01]

(1987); *see also* D.C.Code § 14–102 (1981) (prior inconsistent statement of a party's own witness is allowed in only to impeach). We note that this limitation has come under attack. *See generally* McCormick, *supra,* § 251. Second, historically admissions were allowed in even when parties were not allowed to testify. McCormick, *supra,* § 144, at 364.

Other rationales for the admission of out-of-court statements by party-opponents have also been advanced. These include the argument that their admission is consistent with the adversary theory of litigation, *see, e.g.,* E. Morgan, Basic Problems of State and Federal Evidence 241 (J. Weinstein 5th ed. 1976) ("[A party's] adversary may use against him anything that he has said or done."); the idea that "accepted notions of morality ... require an individual to be responsible for his own action," G. Lilly, *supra,* at 186 n. 72 (citing R. Lempert and S. Saltzburg, A Modern Approach to Evidence 366 (1977)); and the notion that admissions are freely accepted into evidence simply because they always have

token, a rationale for exempting prior inconsistent statements, when they are also admissions, from the foundation requirement, is that "[t]here is less danger of surprising a party than a witness, and the party will have ample opportunity for denial or explanation after the inconsistent statement is proved." McCORMICK, *supra*, § 37, at 81.[3]

■ This rationale, however, for permitting admissions as substantive evidence and without a laid foundation has validity only if in fact the admitting party has the opportunity to refute the hearsay admission. The opportunity to refute is not just the generalized opportunity to contradict the fact asserted in the admission (which opportunity, the government argues, Chaabi took advantage of when he testified), but to explain the specific circumstances and nature of the admission itself, including a flat denial that such an admission was ever made. One way for the government to make such opportunity available might be to introduce the evidence as part of its case in chief.[4] Another way would be to lay a foundation in cross-examining the party-witness, as normally required with prior inconsistent statements. Still another would be to not oppose the party-witness testifying in surrebuttal. In the case before us, the government chose not to take any of these routes. Nor is there any indication that the testimony about the admission was anything other than a surprise; that is, that Chaabi had any idea

that his girl friend would testify as she did, or any reason to think so.[5] Moreover, the government affirmatively opposed appellant's attempts to bring any explanation out on surrebuttal, successfully arguing to the trial court that no surrebuttal should be allowed. Under these circumstances, one principle which underlies the use of admission testimony—that the party has a chance to confront it—was effectively rendered nugatory.

■ The government argues that the broad discretion of the trial court to determine the scope of rebuttal and surrebuttal controls this case. This analysis misconceives the issue, which involves the admissibility and use of hearsay admissions as much as it involves the permissible scope of rebuttal.[6] Although surrebuttal is indeed within the sound discretion of the trial court, *Fitzhugh v. United States*, 415 A.2d 548, 511 (D.C.1980), it should have been permitted under the circumstances presented here. *See Merrill v. United States*, 338 F.2d 763, 766 (5th Cir.1964); *United States v. Wilson*, 490 F.Supp. 713 (E.D.Mich.1980); *see also Robinson v. United States*, 448 A.2d 853, 854–55 n. 3 (D.C.1982) (finding no abuse of discretion where proffered surrebuttal did not meet or reply to rebuttal testimony). The government further argues that the error here was harmless, in light of the strength of the government's case. The trial court itself saw the matter otherwise, commenting that Stanley's testi-

been, and with "apparently prevalent satisfaction with the results," FED.R.EVID. 801(d)(2) advisory committee's note.
    Still, we think that today the fact that a party is available to testify at trial about his statement, under oath and before the trier of fact, is at least one basic rationale underlying the free admissibility of party admissions into evidence.

3. The Federal Rules of Evidence state that the requirement that a witness be "afforded an opportunity to explain or deny" a prior inconsistent statement in order for extrinsic evidence of that statement to be admissible "does not apply to admissions of a party-opponent ..." FED.R. EVID. 613(b). We do not think this rule would preclude a requirement that in certain circumstances a criminal defendant who desires it be afforded some sort of opportunity to address a surprise admission, brought out in rebuttal, that undercuts the heart of his defense. *See United*

*States v. Wilson*, 490 F.Supp. 713, 720–21 (E.D. Mich.1980).

4. We need not decide whether the government could indeed have presented this testimony as part of its case-in-chief since in fact the government did not attempt to do so. The government did concede, however, that it knew about Stanley's testimony for a month prior to trial.

5. Pretrial information as to this testimony could not be obtained as of right under Super.Ct.Crim. R. 16 ("Discovery and Inspection").

6. Because we find this evidentiary analysis dispositive, we need not decide whether the Stanley testimony constituted "new matter" brought out in rebuttal, in which case surrebuttal would have been mandatory. *Gregory v. United States*, 393 A.2d 132, 137 (D.C.1978).

mony "really is critical." We agree. The whole case turned on self-defense, and the presentation of uncontradicted testimony by the defendant's girl friend that he had admitted to her that he pulled the knife for other than self-defense was a seriously incriminating final piece of evidence at the close of the entire trial evidentiary stage.

Accordingly, the judgment below must be reversed and the case remanded for a new trial.[7]

*Reversed and remanded.*

7. In this posture, we need not deal definitively here with appellant's other points on appeal. Whether a videotaped statement challenged as involuntary will in fact be utilized at a new trial, and if so how, is far from clear; its use at the first trial came about under peculiar circumstances and in part at appellant's instigation. The government concedes error in connection with a Jencks Act ruling. And there is no reason to expect certain prosecutorial conduct, regarding which the trial court remonstrated with government counsel, will recur.