**Kisha BRIDGES, Appellant,**

v.

**Winfield W. CLARK, Appellee.**

No. 11–CV–0862.

District of Columbia Court of Appeals.

Argued Sept. 6, 2012.

Decided Jan. 24, 2013.

---

**77.** See *supra* note 13.

Christopher R. Kelly, with whom Peter C. Thomas, Conor Reidy, and Jonathan Porter, Washington, DC, were on the brief, for appellant.

Olekanma A. Ekekwe, Washington, DC, for appellee.

Before WASHINGTON, Chief Judge, McLEESE, Associate Judge, and BELSON, Senior Judge.

McLEESE, Associate Judge:

Appellee Winfield Clark brought an eviction action against appellant Kisha Bridges for nonpayment of rent, and Ms. Bridges brought counterclaims against Mr. Clark for failing to fix various housing-code violations within a reasonable period of time. A jury rendered a verdict in favor of Mr. Clark. On appeal, Ms. Bridges argues that the trial court erred by refusing to instruct the jury on the defense of retaliation and by excluding as inadmissible hearsay an affidavit that Mr. Clark had submitted to the court as an attachment to his pretrial motion to dismiss. We agree with Ms. Bridges that both rulings were incorrect. We therefore reverse and remand for further proceedings.

## I.

In December 2006, Ms. Bridges and her family moved into a house that Ms. Bridges rented from Mr. Clark. Ms. Bridges's monthly rent ranged between $1600 and $1700. Ms. Bridges was responsible for paying a portion of the rent, in amounts ranging from $150 to $250 each month, and the D.C. Housing Authority paid the remainder.

In March 2010, Mr. Clark filed an action against Ms. Bridges seeking eviction and recovery of back rent. Ms. Bridges subsequently filed counterclaims seeking monetary and injunctive relief based on Mr. Clark's alleged failure to address housing-code violations within a reasonable period of time.

The case went to trial in 2011. At trial, Mr. Clark contended the following. Ms. Bridges was consistently late in paying her portion of the rent and was responsible for damage to the house. In addition, Ms. Bridges called housing inspectors about problems, rather than notifying Mr. Clark directly. The housing inspectors would then inform Mr. Clark of the need for repairs. Mr. Clark generally made all necessary repairs within the time required by the housing inspectors notices, even though he was often delayed in making repairs because Ms. Bridges limited his access to the house. Ms. Bridges failed to pay her portion of the rent for three months in 2010, and therefore owed Mr. Clark $453 in back rent.

Ms. Bridges provided a very different version of events. According to her, the condition of the house began to deteriorate in October 2007. Ms. Bridges found plaster damage in several rooms, water damage to the ceiling, and cracks in the kitchen floor. Mr. Clark failed to address these problems in response to her complaints, so Ms. Bridges filed a complaint with the D.C. Housing Authority. After the D.C. Housing Authority inspected the property, Mr. Clark fixed these problems in December 2007.

Numerous additional problems with the house arose in 2008 and 2009, including further water damage, mold, flooding, plumbing leaks, a rodent infestation, lack of heating, missing and loose floor tiles, and a malfunctioning sprinkler system. Ms. Bridges informed Mr. Clark about these problems as they arose and requested that he make the necessary repairs, but he did not respond to her requests. Consequently, Ms. Bridges filed complaints with various D.C. housing agencies, including the D.C. Housing Authority, the Department of Consumer and Regulatory Affairs, and the Department of Health, Bureau of Community Hygiene Rodent Control Division. These housing agencies issued numerous notices to Mr. Clark regarding the violations, and Mr. Clark generally made the necessary repairs in response to the notices.

Finally, in early 2010, the awning of the house collapsed. Ms. Bridges responded by filing a complaint with the D.C. Housing Authority. The D.C. Housing Authority issued an emergency violation notice to Mr. Clark, requiring him to make repairs within twenty-four hours. Mr. Clark fixed the awning within the required time period.

At the close of the trial, the jury found in favor of Mr. Clark both on his claims and on Ms. Bridges's counterclaims. The jury also determined that Ms. Bridges owed Mr. Clark $453 in unpaid rent. The trial court entered a judgment for possession in favor of Mr. Clark, but subsequently permitted Ms. Bridges to redeem her tenancy and maintain possession of the property by paying Mr. Clark $453.

## II.

### A.

■■■■ Ms. Bridges first argues that the trial court erred by refusing to instruct the jury on the defense of retaliation. We agree.[1]

### 1.

It is unlawful for a landlord to take retaliatory action against a tenant who exercises certain legal rights, including the right to complain to the government about violations of housing regulations. D.C.Code § 42–3505.02(a), (b)(2) (2010). When a landlord sues a tenant for possession of rental property, the tenant is entitled to judgment if the suit has been brought in retaliation for the exercise of such legal rights. D.C.Code § 42–3505.02(b). If the landlord's suit is initiated within six months after the tenant has exercised such legal rights, the suit is presumed to be retaliatory. *Id.* The tenant is therefore entitled to judgment unless the landlord presents clear and convincing evidence to rebut the presumption. *Id.*[2]

In the present case, Ms. Bridges first asserted retaliation as a defense in her answer to the complaint. Ms. Bridges reiterated the defense in her amended an-

---

1. The parties disagree about the standard of review applicable to this issue. Ms. Bridges argues that we should review the trial court's ruling de novo, whereas Mr. Clark argues that our review should be for abuse of discretion. We review de novo the question whether there was adequate evidentiary support in the record for the retaliation instruction. *See, e.g., Daniels v. United States,* 33 A.3d 324, 327 (D.C.2011). We review for abuse of discretion, however, the question whether Ms. Bridges forfeited that defense by failing to present it in a timely manner. *Cf. Jaiyeola v. District of Columbia,* 40 A.3d 356, 361 (D.C. 2012) (reviewing for abuse of discretion trial court's ruling that party waived defense by failing to assert it properly at trial).

2. In pertinent part, the statute at issue provides that:

No housing provider shall take any retaliatory action against any tenant who exercises any right conferred upon the tenant by this chapter, by any rule or order issued pursuant to this chapter, or by any other rule of law. Retaliatory action may include any action ... which seeks to recover possession of a rental unit.... [T]he trier of fact shall presume retaliatory action has been taken, and shall enter judgment in the tenant's favor unless the housing provider comes forward with clear and convincing evidence to rebut this presumption, if within the 6 months preceding the housing provider's action, the tenant: .... [c]ontacted appropriate officials of the District government, either orally in the presence of a witness or in writing, concerning existing violations of the housing regulations in the rental unit the tenant occupies or pertaining to the housing accommodation in which the rental unit is located, or reported to the officials suspected violations which, if confirmed, would render the rental unit or housing accommodation in noncompliance with the housing regulations....

D.C.Code § 42–3505.02(a) and (b).

swer. Mr. Clark responded to the defense in his pretrial motion to dismiss, arguing that he filed for eviction not to retaliate against Ms. Bridges but rather because Ms. Bridges had damaged the property and was not paying her portion of the rent. In the joint pretrial statement, the parties stated that Ms. Bridges was asserting a retaliation defense. The joint pretrial statement also contained requests by Ms. Bridges for both a jury instruction and a special-verdict form to address the retaliation defense.

Counsel for Ms. Bridges did not refer to the retaliation defense in opening statement. Nor did Ms. Bridges refer explicitly to the retaliation defense during her trial testimony. Ms. Bridges did testify, however, that on September 22, 2009, and March 8, 2010, she filed written complaints with the D.C. Housing Authority concerning ongoing housing violations. Both written complaints were admitted into evidence. The trial court subsequently took judicial notice of the fact that the complaint in this case was filed by Mr. Clark on March 19, 2010.

Ms. Bridges requested that the jury be instructed about the retaliation defense. The trial court denied that request, concluding that Ms. Bridges had "waived" or "abandoned" the defense by failing to mention it in her opening statement or her trial testimony.

**2.**

■ As a substantive matter, Ms. Bridges introduced sufficient evidence at trial to support her request that the jury be instructed about the retaliation defense. In order to trigger a presumption of retaliatory action, a tenant need only present some evidence that the tenant engaged in protected activity (e.g., reporting housing violations to D.C. authorities) within six months before the allegedly retaliatory ac-

tion. D.C.Code § 42–3505.02(b). As we have previously noted, Ms. Bridges introduced evidence at trial that she had complained in writing to government officials on September 22, 2009, and March 8, 2010. Both of those complaints were made within six months of March 19, 2010, the date on which Mr. Clark initiated this eviction action. Because Ms. Bridges introduced some evidence from which the jury could find that the presumption of retaliatory action was triggered, she was substantively entitled to have the jury instructed on the retaliation defense. *See Gomez v. Independence Mgmt.*, 967 A.2d 1276, 1291 (D.C.2009) ("[T]he statutory presumption relieves the tenants of the burden of establishing a *prima facie* case of retaliatory action."). *See generally, e.g., East Capitol View Cmty. Dev. Corp. v. Robinson*, 941 A.2d 1036, 1039 (D.C.2008) (party entitled to defense instruction if "there was record evidence that could at least support such a claim").

■ We also conclude that Ms. Bridges did not "abandon" or "forfeit" the retaliation defense by failing to mention the defense in opening statement or in her trial testimony. Ms. Bridges raised the retaliation defense in her answer, her amended answer, and the joint pretrial statement. Under those circumstances, Ms. Bridges was not required to discuss the defense in her opening statement. *Cf. Hentz v. CBI–Fairmac Corp.*, 445 A.2d 1004, 1005 (D.C. 1982) (reversing trial court's directed verdict in favor of landlord based on tenant's failure to mention cause of action in her opening statement; "equitable considerations require that litigants not be denied their day in court merely because they fail to allege in their opening statements that which is sufficiently alleged in their pleadings"); *Lampka v. Wilson Line, Inc.*, 117 U.S.App.D.C. 55, 55–56, 325 F.2d 628, 628–29 (1963) (per curiam) (reversing trial

court's directed verdict based on plaintiff's opening statement; "Since the opening statement may be waived entirely, grave doubt arises whether, if a complaint states a cause of action, an opening statement can so dilute the formal pleading as to afford a basis for summary disposition").

We similarly conclude that Ms. Bridges was not required to refer explicitly to the retaliation defense in her trial testimony. First, although she did not use the word "retaliation," Ms. Bridges did provide testimony sufficient to support the retaliation defense, by testifying that she filed complaints with the D.C. Housing Authority regarding housing-code violations on dates that were within six months of the date on which Mr. Clark filed this eviction action. *See Gomez,* 967 A.2d at 1289 (statutory presumption triggered "if a tenant alleges acts which fall under the retaliatory eviction statute").

■ Second, in determining whether there is sufficient evidence to support a requested defense instruction, the inquiry focuses on the record as a whole, not solely on the defendant's testimony. *See, e.g., Guillard v. United States,* 596 A.2d 60, 62–63 (D.C.1991) (concluding that defendant was entitled to instruction on self-defense, even though defendant himself did not testify in support of that defense, because there was sufficient evidence in record taken as whole).

■ Third, whether the jury should be instructed on a defense does not depend on whether a witness has explicitly referred to that defense by name. For example, a defendant in a criminal case could surely be entitled to an entrapment instruction even though no witness actually used the term "entrapment." In fact, where a defense is defined in legal terms, it may be impermissible for the witness to testify directly in those terms. *See generally, e.g., Steele v. D.C. Tiger Market,* 854 A.2d

175, 181–83 (D.C.2004) (discussing restrictions on witness testimony framed in legal terms).

■ Finally, a requirement that the tenant explicitly testify to the existence of retaliation would be contrary to the clear purpose of the statutory presumption of retaliatory action. Tenants often will not have direct evidence of a landlord's retaliatory motive. By creating a presumption of retaliatory action, the legislature "relieve[d] the tenants of the burden of establishing a *prima facie* case of retaliatory action." *Gomez,* 967 A.2d at 1291. The presumption is triggered even in the absence of direct evidence, whether from the tenant or anyone else, that the landlord in fact acted with a retaliatory motive. And when the presumption is triggered, the landlord bears the burden of rebutting the presumption by clear and convincing evidence. D.C.Code § 42–3505.02(b). That statutory scheme is incompatible with a requirement that a retaliation defense is available only if the tenant testifies directly that the landlord acted with a retaliatory motive.

### 3.

Mr. Clark makes several arguments in support of the trial court's decision not to instruct the jury on the defense of retaliation. We are not persuaded by those arguments. First, Mr. Clark asserts that Ms. Bridges failed to object to the trial court's refusal to give a retaliation instruction. To the contrary, Ms. Bridges not only requested the instruction but also made clear that she objected to the trial court's refusal to give the instruction.

Second, Mr. Clark argues that instructing the jury on the retaliation defense would have resulted in unfair surprise and prejudice. Mr. Clark had ample notice, however, that Ms. Bridges intended to as-

sert a retaliation defense, because Ms. Bridges so stated in her initial answer, her amended answer, and the joint pretrial statement. For the reasons we have already explained, Mr. Clark could not reasonably have thought that the retaliation defense had been forfeited during the trial. Therefore, instructing the jury on the retaliation defense would not have unfairly surprised Mr. Clark. *Cf., e.g., Han v. Southeast Acad. of Scholastic Excellence Pub. Charter Sch.,* 32 A.3d 413, 417 (D.C. 2011) (concluding that trial court was correct to consider defense that was raised in motion for summary judgment but not pleaded as affirmative defense in initial pleadings, because opposing party had opportunity to respond, did respond, and "cannot now claim unfair surprise"); *Word v. Ham,* 495 A.2d 748, 751 (D.C.1985) (holding that appellants' failure to plead waiver defense in their answer or counterclaim did not prohibit appellants from raising that defense, because "[a]ppellees were put on notice of the defense by appellants' opposition to their motion for summary judgment and had the opportunity to respond, and thus cannot claim to have been prejudiced"). Moreover, Mr. Clark has at no point identified any specific respect in which his case would have been unfairly prejudiced by submission of the retaliation defense to the jury.

In sum, we conclude that Ms. Bridges presented sufficient evidence at trial to support her request for an instruction on the defense of retaliation, and that Ms. Bridges did not abandon or forfeit that defense at trial. The requested instruction therefore should have been given.

## B.

■ Ms. Bridges also argues that the trial court erred by excluding as inadmissible hearsay an affidavit that Mr. Clark submitted to the court as an attachment to his pretrial motion to dismiss. She contends that the affidavit should have been admitted as an adoptive party admission. We agree.[3]

## 1.

Mr. Clark filed a pretrial motion to dismiss, arguing among other things that he had promptly corrected any defects in the house as soon he became aware of them. One of the attachments to the motion to dismiss was a sworn affidavit from Eric Love. The affidavit was only eight lines long. In the affidavit, Mr. Love swore that he helped Mr. Clark to fix a "pin hole leak on the roof" of the house in September 2008. Mr. Love also swore that Ms. Bridges was present at the time of the repair, and that the "leaks were too small to do any water damage to the furniture."

At trial, Mr. Clark testified that he had "[n]ever found a leak in the roof." In response, Ms. Bridges sought to have the Love affidavit admitted into evidence. The trial court ruled, however, that Ms. Bridges could not use the Love affidavit, on the ground that the affidavit was hearsay.

**3.** Ms. Bridges argues that this court should review de novo the trial court's ruling excluding the affidavit, whereas Mr. Clark contends that this court's review should be for abuse of discretion. This court's cases do not provide clear guidance on that issue. *See, e.g., In re K.J.,* 11 A.3d 273, 279 (D.C.2011) ("Evidentiary rulings by the trial court are reviewed for abuse of discretion[,] but ... determining whether a statement falls within an exception to the hearsay rule ... presents a question of law which this court considers de novo.") (internal quotation marks omitted); *Obelisk Corp. v. Riggs Nat'l Bank,* 668 A.2d 847, 855 n. 7 (D.C.1995) (trial court acted within its "broad discretion" in finding that statement was not admission of party opponent). We need not resolve the issue. For the reasons explained in text, the ruling at issue was erroneous even if reviewed deferentially.

Ms. Bridges raised the issue of the Love affidavit again the next morning, arguing among other things that the affidavit was an admission of a party opponent. Mr. Clark opposed admission of the Love affidavit unless the entire motion to dismiss and all of its accompanying exhibits were also admitted. The trial court rejected that suggestion, but also denied Ms. Bridges's renewed request that the Love affidavit be admitted into evidence. In excluding the Love affidavit, the trial court reasoned that attaching an exhibit to a motion does not constitute a waiver of the hearsay rule, and that admission of the affidavit would be more prejudicial than probative because the affidavit would require clarification through testimony and cross-examination.

**2.**

This court has adopted the substance of Federal Rule of Evidence 801(d)(2), which provides that out-of-court statements by a party opponent are admissible. *Harris v. United States*, 834 A.2d 106, 115–16 (D.C. 2003). More specifically, Rule 801(d)(2)(B) makes admissible an out-of-court statement that is offered against a party if "the party manifested that it adopted or believed [the statement] to be true."

The Love affidavit is admissible under the principles of Rule 801(d)(2)(B) as an adoptive admission of a party opponent.[4] Mr. Clark manifested his adoption and his belief in the truth of the pertinent part of the affidavit by submitting the affidavit to the court as part of a motion to dismiss in which he argued that he had made repairs to the house promptly after learning of problems.[5] Mr. Clark further indicated his belief in the truth of the affidavit at trial, by consenting through counsel to the admission of the affidavit into evidence as long as the motion to dismiss was admitted in its entirety. *See Harris*, 834 A.2d at 117 (Rule 801(d)(2)(B) "does not require an explicit statement of adoption; all that is necessary is some manifestation of a party's intent to adopt another's statements, or evidence of the party's belief in the truth of the statements.") (internal quotation marks omitted).

We also view it as quite significant that Mr. Clark was personally in a position to assess the veracity of Mr. Love's statement in the affidavit that Mr. Love helped Mr. Clark to fix a "pin hole leak on the roof" of the house in September 2008, because Mr. Clark would presumably know whether he had in fact been present at and involved in such a repair. Finally, we note that the pertinent statement was not buried in a lengthy document, but rather was clearly expressed in an *eight-line affidavit*.

■ For these reasons, we conclude that Mr. Clark manifested his adoption and belief in the truth of the pertinent part of the Love affidavit. This conclusion finds substantial support in *prior decisions* of this court and the United States Court of Appeals for the District of Columbia Circuit. *See Harris*, 834 A.2d at 115–23 (trial court erred by completely excluding

4. At trial, Ms. Bridges was focused on introducing the portion of the Love affidavit that related to the repair of the "pin hole leak." Ms. Bridges appears to have assumed that if that portion of the affidavit were to be admitted, then the rest of the affidavit would properly be admissible under the rule of completeness. *See generally, e.g., Cox v. United States*, 898 A.2d 376, 381 (D.C.2006) (discussing rule of completeness).

5. Although Mr. Clark did not specifically refer to the Love affidavit in the body of the motion to dismiss, the pertinent part of the affidavit was clearly submitted to provide factual support for Mr. Clark's contention that he had made repairs to the house promptly after learning of problems.

police officer's affidavit, which was signed by prosecutor and submitted as part of search-warrant application, because at a minimum one portion of affidavit should have been admitted as adoptive admission); *United States v. Warren,* 310 U.S.App.D.C. 1, 9–10, 42 F.3d 647, 655–56 (1994) (trial court erred by excluding sworn statement by police officer, which was attached to criminal complaint submitted to court, because statement should have been admitted as adoptive admission); *United States v. Morgan,* 189 U.S.App.D.C. 155, 159–61, 581 F.2d 933, 937–39 (1978) (trial court erred by excluding police officer's affidavit, which was used to support search-warrant request, because statement should have been admitted as adoptive admission; "where, as here, the government has indicated in a sworn affidavit to a judicial officer that it believes particular statements are trustworthy, it may not sustain an objection to the subsequent introduction of those statements on grounds that they are hearsay").[6]

■ To be clear, we do not mean to suggest that any document submitted to a court may later be treated as an adoptive admission. In both civil and criminal cases, whether a party has adopted or manifested a belief in the truth of a document that the party has submitted to a court will depend heavily on context. *See Harris,* 834 A.2d at 122–23 (remanding for further consideration of "fact-specific" question whether prosecution, by approving warrant application, had "necessarily impl[ied] agreement with the entire contents of the affidavit" submitted in support of application). Our holding thus reflects the specific circumstances of this case: by presenting to the court a sworn affidavit

that made factual representations about Mr. Clark's own conduct, and by seeking dismissal of this case based on those factual representations, Mr. Clark clearly manifested his belief in the truth of those factual representations.

**3.**

■ Although Mr. Clark advances several arguments in support of the trial court's decision to exclude the Love affidavit, we do not find those arguments persuasive. First, Mr. Clark contends that the Love affidavit was inadmissible because it was a prior inconsistent statement by Mr. Clark and thus would have been admissible only if Ms. Bridges had first confronted Mr. Clark with the affidavit. This argument is flawed for two reasons. Procedurally, Ms. Bridges actually attempted to confront Mr. Clark with the affidavit, but was prevented from doing so by the trial court's ruling that the affidavit was inadmissible hearsay. Substantively, Ms. Bridges was not required to first confront Mr. Clark with the Love affidavit. There is a general rule that extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is first given an opportunity to explain or deny the statement. *See Parker v. United States,* 757 A.2d 1280, 1288 (D.C.2000); *see also* Fed.R.Evid. 613(b). That requirement, however, does not apply to prior inconsistent statements that qualify as adoptive admissions. *See Chaabi v. United States,* 544 A.2d 1247, 1248 (D.C.1988) (party opponent admissions "do not require foundations, even where, as here, they are also prior inconsistent statements"); *see also* Fed.R.Evid. 613(b) (general requirement that witness must first be

---

6. Although our prior cases involving analogous adoptive admissions have arisen in the criminal context, the adoptive-admission rule is applicable in both civil and criminal cases.

*See Harris,* 834 A.2d at 117–18 (citing with approval several cases finding adoptive admission where party submitted documents to court in civil case).

confronted with prior inconsistent statement "does not apply to opposing party's statement under Rule 801(d)(2)").

Second, Mr. Clark argues that the Love affidavit is inadmissible because Mr. Love was neither a party to the case nor an employee of Mr. Clark. It is of course true that Mr. Love was not a party to this case, and we agree that the record would not support a conclusion that Mr. Love was an employee of Mr. Clark. The Love affidavit thus would not properly have been admissible under Federal Rule of Evidence 801(d)(2)(A) (statements of parties) or 801(d)(2)(D) (statements of agent or employee of party). But the Love affidavit nevertheless was properly admissible as an adoptive admission under the principles of Rule 801(d)(2)(B), because Mr. Clark manifested his belief in the truth of that statement.

■■■ Third, Mr. Clark argues that the Love affidavit should not be considered admissible as an adoptive admission because the affidavit required a foundation and clarification through direct testimony and cross-examination. To the contrary, party admissions "do not require foundations to be admissible as substantive evidence." Harris, 834 A.2d at 116 (quoting In re M.D., 758 A.2d 27, 32 (D.C.2000)); Chaabi, 544 A.2d at 1248. Similarly, an admission of a party opponent may not be excluded simply because the opposing party might wish to clarify the admission through further testimony. See Harris, 834 A.2d at 116 ("[o]ne rationale for this generous treatment of party admissions is a party's ability to rebut the out-of-court statement by putting himself on the stand and explaining his former assertion") (internal citation and quotation marks omitted); Chaabi, 544 A.2d at 1248–49 ("the party will have ample opportunity for denial or explanation after the inconsistent

statement is proved") (internal quotation marks omitted).

■■■ Finally, Mr. Clark contends that the affidavit was properly excluded as more prejudicial than probative. See generally Johnson v. United States, 683 A.2d 1087 (D.C.1996) (en banc) (otherwise admissible evidence may be excluded if its probative value is "substantially outweighed" by "danger of unfair prejudice"). Other than to suggest that he might have wished to respond to the affidavit, however, Mr. Clark does not specify in what way the admission of the Love affidavit would have unfairly prejudiced him. Nor is it apparent what unfair prejudice would have occurred. The Love affidavit therefore was not subject to exclusion on grounds of unfair prejudice. Cf. Harris, 834 A.2d at 122 (concluding that admitting police officer's affidavit, which was signed by prosecutor and submitted as part of search-warrant application, as an adoptive admission of the government would not have "confused the jury so as to justify exclusion of the evidence as substantially more prejudicial than probative"); Warren, 310 U.S.App.D.C. at 9–10, 42 F.3d at 654–55 (concluding that adoptive admission of party opponent should not have been excluded on ground of prejudice, because neither trial court nor objecting party "identified any potential prejudice").

### C.

■■■ We now turn to the question whether the errors were harmless. To conclude that a non-constitutional error is harmless, we must find it "highly probable that that error did not contribute to the verdict," and must have a "fair assurance that the judgment was not substantially swayed by [the error]." In re Ty.B., 878 A.2d 1255, 1267 (D.C.2005) (emphasis and internal quotation marks omitted). We cannot find such assurance in this case.

■ We focus first on the impact of the exclusion of the Love affidavit. This case turned on the respective credibility of Mr. Clark and Ms. Bridges. Mr. Clark contended that he promptly repaired the house whenever he learned of problems, that Ms. Bridges was often late in paying her portion of the rent, and that Ms. Bridges was responsible for damaging the house. In contrast, Ms. Bridges claimed that the house suffered from many serious defects, that Mr. Clark did not respond until government officials compelled him to do so, and that she was not responsible for damage to the house. The jury apparently believed Mr. Clark's contentions, and therefore found in his favor on his claim for eviction and back rent, and against Ms. Bridges on her contentions that she was entitled to withhold rent and recoup previously paid rent because of the defects to the house. If the jury had believed Ms. Bridges, however, it could properly have found against Mr. Clark on the action for eviction and back rent, and for Ms. Bridges on her counterclaims.

Had Ms. Bridges been able to introduce evidence that there had in fact been a hole in the roof in 2008, she would have been able to argue to the jury that Mr. Clark had testified falsely when he claimed that he had never found a leak in the roof. Such an argument would have held out the prospect of undermining Mr. Clark's credibility more generally. *Cf. Rosser v. United States*, 381 A.2d 598, 609 n. 12 (D.C. 1977) ("impeachment of a defendant by showing that he appeared to lie on the stand is usually devastating"); *Napue v. Illinois*, 360 U.S. 264, 269–70, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.... It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject ....") (internal citation and quotation marks omitted). Given that this case turned on the comparative credibility of Mr. Clark and Ms. Bridges, we cannot say with the requisite assurance that exclusion of the Love affidavit was harmless. *Cf. R & G Orthopedic Appliances & Prosthetics, Inc. v. Curtin*, 596 A.2d 530, 540–41 (D.C.1991) (concluding error was not harmless where trial court erroneously restricted impeachment of plaintiff's key witness and plaintiff's case largely rested on testimony of that witness).[7]

For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings.

*So ordered.*

---

**7.** Because the exclusion of the Love affidavit by itself requires reversal, we need not decide whether the preclusion of Ms. Bridges's retaliation defense would also require reversal.