**Winfield CLARK, Appellant,**

v.

**Kisha BRIDGES, Appellee.**

**No. 12–CV–49.**

District of Columbia Court of Appeals.

Submitted Dec. 19, 2012.

Decided Aug. 22, 2013.

Olekanma A. Ekekwe–Kauffman filed a brief for appellant.

Peter C. Thomas, Christopher R. Kelly, Conor Reidy, and Jonathan D. Porter, Washington, DC, filed a brief for appellee.

Before FISHER and THOMPSON, Associate Judges, and RUIZ, Senior Judge.

RUIZ, Senior Judge:

This is the second appeal in a landlord-tenant dispute between Winfield Clark (the landlord) and Kisha Bridges (the tenant). In a recently published opinion, *Bridges v. Clark,* 59 A.3d 978 (D.C.2013), this court reversed a jury verdict in the landlord's favor in an eviction action for nonpayment of rent. Before that judgment of possession was reversed on appeal, however, the trial court had permitted the tenant to redeem her tenancy and remain in possession of the property. *Id.* at 982. The landlord filed a second complaint (apparently before the jury trial on the first complaint) this time seeking a non-redeemable judgment of possession for the tenant's breach of the terms of the lease. *Id.* at 981. That complaint went to trial in December 2011 and concluded with a jury verdict in the tenant's favor. We now review the landlord's appeal of that judgment.

## I. Time to Appeal Under D.C. Appellate Rule 4

■ Before we address the substantive merits of the landlord's appellate contentions, we pause to review an earlier order deeming the appeal to have been timely filed. This court's rules require that an appellant file a notice of appeal within the time period provided in D.C. Appellate Rule 4. The tenant filed a motion to dismiss the appeal, arguing that this Court does not have jurisdiction over an appeal that was not timely filed. (citing *Circle Liquors, Inc. v. Cohen,* 670 A.2d 381, 385 (D.C.1996)). The landlord had an opportunity to file a response to the tenant's motion to dismiss, but did not do so. A Motions Division of this court denied the tenant's motion to dismiss the landlord's appeal. However, a Merits Division of this court is not bound by a Motions Division's decision to deny a motion to dismiss an

appeal, *Jung v. Jung*, 844 A.2d 1099, 1107 n. 8 (D.C.2004), unless the motion is denied with prejudice. *District of Columbia v. Trs. of Amherst College*, 499 A.2d 918, 920 (D.C.1985). The Motions Division order was not "with prejudice," so we may reconsider its decision.[1] We do so in order to highlight a change in court rules that may create a trap for the unwary civil litigant who wishes to file a timely appeal.

Subject to provisions not at issue here,[2] an appeal in a civil case must be taken "within 30 days after entry of the judgment or order from which the appeal is taken." D.C.App. R. 4(a)(1). D.C. Appellate Rule 4(a)(6) defines "entry of the judgment," explaining that "[a] judgment or order is entered for purposes of this rule when it is entered in compliance with the rules of the Superior Court." However, "[w]hen a rule of the Superior Court *requires* service of the notice of the entry of a judgment or order to be made by mail, the judgment or order will not be considered as having been entered, for the purpose of calculating the time for filing a notice of appeal, until the fifth day after the Clerk of the Superior Court has made an entry on the docket reflecting the mailing of notice by that clerk." *Id.* (emphasis added).

The practical application of these provisions was explained by this court in *Singer v. Singer*, 583 A.2d 689 (D.C.1990). There, the court held that the plain language now included in D.C. Appellate Rule 4(a)(6) created a five-day period (exclusive of weekends and legal holidays) that preceded the commencement of the ensuing thirty-day period for noting an appeal under D.C. Appellate Rule 4(a)(1). Accordingly, the two time periods were calculated separately, affording affected parties a variable total time period of at least thirty-five days (depending on intervening weekends and holidays) in which to file a notice of appeal. Indeed, for a time, almost all parties received the benefit of the extra five days. In *Cooter v. Chapman*, 885 A.2d 1279, 1280 (D.C.2005), this court noted the effect of a change in the text of the rules, which deleted an earlier clause that applied this five-day period to only those judgments and orders "entered or decided out of the presence of parties and counsel." At that time Superior Court Civil Rule 77(d) (2005) required service by mail "in virtually all civil cases," so almost all parties were entitled to the extra time for mailing provided by our rule. *Id.* (noting inapplicability of earlier cases, like *District of Columbia v. Murtaugh*, 728 A.2d 1237, 1242 (D.C.1999), which had been decided under previous rule).

However, the rules applied by the court in *Cooter* have changed again. This time,

---

1. In light of our conclusion that the landlord's appeal must be allowed, we do not reach the tenant's argument that if the appeal was untimely, the court would lack jurisdiction to entertain it. *Compare Circle Liquors, Inc. v. Cohen*, 670 A.2d at 385 (holding that D.C. App. R. 4's thirty-day time to appeal is "mandatory and jurisdictional"), *with Bowles v. Russell*, 551 U.S. 205, 210, 211, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (distinguishing between jurisdictional provisions, generally embodied in statutes, that delineate the authority of the court to consider a case, and nonjurisdictional "claim-processing rules," which are found in court rules), *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (holding that failure to comply with time requirement in Federal Rule of Bankruptcy Procedure 4004 did not affect the court's subject-matter jurisdiction), *and Capitol Hill Restoration Soc'y v. Mayor's Agent for Historic Pres.*, 44 A.3d 271, 277 (D.C.2012) (holding that the time to appeal set out in Super. Ct. Civ. R. 15 "acquires the force of a statutory jurisdictional mandate" because the applicable statute providing for judicial review, D.C.Code § 2–510(a), requires compliance with the time period set forth in the court rules).

2. *See* D.C.App. R. 4(a)(4)(A).

however, the change is not to this court's rules, but to the Superior Court's. Until a change in 2005 (which took effect after the events in *Cooter*), Superior Court Civil Rule 77(d) required, in part, that "[i]mmediately upon the entry of an order or judgment the clerk *shall* serve a notice of the entry *by mail* in the manner provided for in Rule 5(b)." (Emphasis added.) However, the amended rule 77(d) now requires only that "the clerk shall serve a notice of entry *in the manner provided for in Rule 5(b)*." Super. Ct. Civ. R. 77(d)(1) (2006 & 2013) (emphasis added). Rather than requiring service by mail in all cases, Superior Court Civil Rule 5(b) permits service in a variety of fashions, including in-person delivery (5(b)(2)(A)(i)), leaving the document at the person's office or home (5(b)(2)(A)(ii) and (iii)), mail (5(b)(2)(B)), leaving a copy with the clerk's office (5(b)(2)(C)), and electronic delivery (5(b)(2)(D)).

The change to Superior Court Civil Rule 77(d), with its reference to the permissive Superior Court Civil Rule 5(b), was apparently motivated by changes to corresponding provisions of the Federal Rules of Civil Procedure.[3] The Federal Rules were modified to accommodate the increasing acceptance of electronic service as an alternative to mailing. *See* Fed.R.Civ.P. 77 (Advisory Committee Notes, 2001 Amendments) (noting that due to changes in "Rule 5(b)" and "the success of . . . experiments" done by courts with electronic service, Rule 77 would also be changed). Accordingly, we are left with the inescapable conclusion that Superior Court Civil Rule 77(d) no longer can be read as *requiring* the clerk to serve the parties by mail. To the contrary, the clerk is now empowered to serve the parties in any manner permitted by Superior Court Civil Rule 5(b).

■ This conclusion compels another: The five-day time period provided for in D.C. Appellate Rule 4(a)(6) is no longer triggered by Superior Court Civil Rule 77(d). As noted previously, the additional five-day period applies only when "a rule of the Superior Court *requires* service . . . to be made by mail." D.C.App. R. 4(a)(6) (emphasis added).[4] Since the more per-

---

**3.** As a result of the 2005 amendment, Superior Court Civil Rule 77(d) is now substantively identical to its federal analogue, Federal Rule of Civil Procedure 77(d), which was amended in 2001 to remove the mailing requirement.

**4.** We note that the court rules applicable in Federal Courts of Appeal do not contain an analogous time-extending provision for mailing. *See* Fed. R.App. P. 4(a)(7). Federal appellate courts have also rejected efforts to extend the time for noting an appeal through the application of either Federal Rule of Civil Procedure 6(d) or Federal Rule of Appellate Procedure 26(c). Both rules apply only when a time period is commenced by service. As a result, those provisions cannot be applied to a notice of appeal because the time period for appeal is commenced by the order's or judgment's entry, and not the clerk's subsequent service. *See, e.g., Ultimate Appliance CC v. Kirby Co.*, 601 F.3d 414, 416 (6th Cir.2010) (collecting cases). Accordingly, our decision in this case aligns our practice with that of the federal appellate courts on this issue. In both tribunals, prospective appellants in civil cases must file within thirty days of entry of an order or judgment on the trial court's docket, unless one of the other time-extending provisions of D.C. Appellate Rule 4(a) or Federal Rule of Appellate Procedure 4(a) applies. *See generally*, Editor's note to D.C.App. R. 4 (stating that "[t]he 2004 revision of the Rules of the District of Columbia Court of Appeals were intended to conform the court's rules, wherever possible, to the Federal Rules of Appellate Procedure and, to that extent, to attain uniformity in the rules governing appellate practice in the District of Columbia").

The federal rules are not identical, however, because they provide, in defining when a judgment or order is deemed to be entered for purposes of noting an appeal, that if a separate document is required by the rules, "entry" occurs at the earlier of when the separate document is issued, or 150 days from the date of entry on the docket. Fed. R.App. 4(a)(7).

missive Superior Court rule no longer contains any such requirement, we cannot read D.C. Appellate Rule 4(a)(6) to defer the effective date, for the purposes of appeal in a civil case, of entry of an order or judgment.[5]

In this case, the jury rendered its verdict on December 7, 2011. The clerk docketed the judgment on the same day.[6] As a result, the effective date of entry was December 7, 2011, and the thirty-calendar-day period for a notice of appeal commenced the following day. D.C.App. R. 26(a)(1). Counting forward, the landlord's window for a timely notice of appeal closed on January 6, 2012.[7] Since his appeal was not filed until January 13, 2012, it was untimely.

■ However, we decline to simply dismiss this appeal. Our past cases suggest that in circumstances like this one, our dismissal would be "without prejudice to reinstatement of the appeal if appellant seeks and receives in the trial court" an extension of time to file his appeal pursu-

ant to D.C. Appellate Rule 4(a)(5).[8] *Frazier v. Underdue–Frazier*, 803 A.2d 443, 445 (D.C.2002) (allowing appellant who had filed a notice of appeal within thirty days of the conclusion of the Rule 4(a)(1) period to seek reinstatement of dismissed appeal if he could obtain extension of time to file from the trial court). If appellant had been entitled to the extra five-day period (as indeed, the Motions Division that previously ruled on this issue concluded), then his appeal would have been timely filed. Given the legitimate uncertainty about how D.C. Appellate Rule 4(a)(6) functioned after the amendments to the Superior Court's rules and the fact almost "all civil cases" received the benefit of the extra five days for quite some time before the amendment, *see Cooter*, 885 A.2d at 1280, we would reject any conclusion that the landlord has not shown "excusable neglect" as an abuse of discretion. Accordingly, we think it appropriate to treat this appeal as though it obtained the necessary extension from the trial court and consider

---

The D.C. Appellate Rules do not have a comparable provision.

5. Different timing rules apply to criminal appeals, which do require mailing and provide five additional days for mailing when a judgment or order is "signed or decided out of the presence of the parties and counsel." D.C.App. R. 4(b)(5).

6. For reasons not clear, although the judgment was filed, docketed, and mailed on December 7, 2011, it bears an "Ordered" date of January 4, 2012. We note that the landlord's notice of appeal also gives the date of entry as December 7, 2011. Accordingly, we attach no significance to the "Ordered" date on the judgment, which we assume is an error. *See* Super. Ct. Civ. R. 58 (clerk shall promptly enter judgment), 79(a) (clerk shall enter judgment on the docket); D.C.App. R. 4(a) (time for appeal begins to run when judgment is entered).

7. A Superior Court Civil Rule 60(b)(6) motion filed on December 23, 2011, by the landlord

did not toll the time in which to file a notice of appeal under D.C. Appellate Rule 4(a)(4)(A)(v) because it was filed more than ten business days after the judgment was entered.

8. The Superior Court is empowered to grant an extension of time in which to file an otherwise untimely appeal, if 1) the notice of appeal is filed within thirty days after the thirty-day period prescribed by D.C.App. R. 4(a), and 2) appellant makes a showing of "excusable neglect or good cause." D.C.App. R. 4(a)(5). Although the time to file a criminal appeal may be extended by the Superior Court without a motion, *see* D.C.App. R. 4(b)(4), the civil appellate rules require a motion once the thirty-day period to file an appeal has expired. D.C.App. R. 4(a)(5)(B). Appellant did not file such a motion in this case, but did file his notice of appeal within the thirty-day period following the initial thirty-day period prescribed by Rule 4(a).

it on the merits.[9]

## II. Trial for Possession

On appeal, the landlord complains about the trial court's rulings narrowing the various breaches of the lease he initially presented and allowing only a single claim of breach to go to the jury: whether the tenant had denied potential purchasers reasonable access to the property. During a pretrial hearing, the trial court eliminated the landlord's other claimed breaches for various reasons. The landlord's claim that the tenant had failed to make or pay for repairs was eliminated because the landlord was not able to demonstrate that he asked the tenant to make or pay for those repairs during the "cure" period after he sent his notice of eviction. The landlord's claim that an unauthorized person was living at the residence was eliminated as a discovery sanction after the landlord failed to supplement his interrogatory responses to indicate which unauthorized person he believed had resided at the property during the relevant time period. Then, the trial court also ruled that the landlord had failed to demonstrate that he had any evidence related to fighting on the property that supported a timely or legally cognizable basis for evicting the tenant on that basis.

The landlord did not fare better at trial. On the second day of trial, the court dismissed the landlord's claim that the tenant had denied him access to the property for inspection purposes, after the tenant had complained that several items needed repair. After hearing testimony from the landlord, the court ruled that he had never actually "requested" permission to access the property, as required by the lease. Accordingly, the court granted the tenant's motion for a directed verdict on that claimed breach. Thus, the only issue the jury considered was whether the tenant had denied potential purchasers access to the property during the time period encompassed by the notice. As noted earlier, the jury returned a verdict in the tenant's favor.

The landlord challenges the trial court's rulings on a variety of grounds. However, none of his arguments merits reversal.

■ First, contrary to the landlord's assertions, the trial court did not misapprehend the relevant time period at issue in this case, which is established by the combined application of 14 DCMR § 4301.4 (2012) (only violations of a lease occurring within a six-month period preceding the notice of eviction may be grounds for eviction) and D.C.Code § 42–3505.01(b) (2001) (eviction may occur only if tenant has not cured the lease violation within thirty days of notice of eviction). As a result, the landlord had to prove that the claimed violations of the lease occurred during the six-month period that preceded October 5, 2010, when notice of eviction was given, and that those violations went uncured for thirty days after that date. We see no errors in the trial court's pretrial rulings related to the timing of any of the events at issue in this case.[10]

---

9. Accordingly, we are not making an exception to the "firm rule of retroactivity for our rulings" adopted in *Davis v. Moore*, 772 A.2d 204–09 (D.C.2001). Rather, we are simply avoiding a *pro forma* remand with only one legally acceptable outcome. *See Taylor v. United States*, 661 A.2d 636–47 (D.C.1995) ("[W]here we conclude that the 'facts ... leave the trial court with but one option it may choose without abusing its discretion,' we need not remand for the trial court to exercise that discretion." (internal citations omitted)).

10. At one point in his brief, the landlord asserts that the trial court's exclusion of evidence related to repairs "knocked off [landlord's] claim for damages in the property and all the evidence [landlord] would have pro-

We also see no error with respect to the grant of a directed verdict on the claim that the tenant breached the lease by failing to allow the landlord access to the property for the purpose of inspection and to make necessary repairs. The lease provision at issue provided that "subject to the tenant's consent," the landlord would have access to the property for "inspections" and other "necessary services."[11] The trial court interpreted this provision, according to what it felt was the "plain English" meaning of consent, to mean that the landlord had to ask the tenant's permission to access the property, and could not merely inform the tenant of his intent to access the property and leave it to the tenant to raise any objections. Because the landlord had not made such an express request, the court did not reach the question whether the tenant had unreasonably withheld consent.[12]

This court has not previously ruled on what the phrase "subject to the tenant's consent" means in this context or what the landlord needs to show in terms of requesting consent. We conclude, however, that the landlord's claim of breach on this point can be resolved without interpreting the provision at issue. Even assuming the landlord had validly sought the tenant's consent, and further assuming that the tenant had unreasonably withheld it, the landlord could not have succeeded on his claim of breach of contract. The record includes undisputed evidence[13] establishing that, after notifying the tenant of his

duce[d] thereof." After reviewing the pretrial hearings on October 3, 11, and November 21, 2011, we see no indication that the landlord pursued a claim for monetary damages, as distinguished from a judgment of possession based on breach of the lease due to failure to reimburse for repairs (a claim the trial court rejected after the landlord failed to produce evidence showing that he had asked the tenant for reimbursement). Rather, it appears the landlord conceded that damages were not at issue, and withdrew several exhibits related to damages during the November 21, 2011, hearing while also objecting to the admission of several tenant's exhibits that went to "damages." We see no reference to damages during the mid-trial discussion of the lease's holdover provision that the landlord cites in his brief. Accordingly, the landlord's claim is unpreserved and we will not address it for the first time on appeal.

11. The full lease provision reads as follows: "Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter the Premises to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, tenants or workers.... As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent."

12. The landlord sent letters to the tenant informing her of when he planned to access the property, and, according to his understanding of the lease, the tenant "has a right to object to it or to say when we can come in and make the repairs." One such letter was read during the landlord's testimony. In it, the landlord informed the tenant that he "will be entering the property ... on Wednesday, April 7th ... to perform an inspection of the property." The letter also stated that the landlord was giving "24 hour notice letting you know that I will be entering the premises for inspection purposes only." None of the language read by the landlord phrased the notice given to the tenant as a request for access to the property.

13. The landlord conceded that he was able to enter the premises and make repairs, even though he felt that on "many occasions" he was not allowed to access the property. He explained that he "set a time from the hours of nine a.m. to four o'clock p.m. to enter the premises" because "usually during this period ... [t]he tenant is not there." He and his contractors would then "go in and do the work" and "clean up and leave the premises." When asked how he entered the property, the landlord explained his understanding that if he had not heard from the tenant after giving twenty-four hour's notice of his intention to enter the home, he could simply enter the home.

intent to access the premises, the landlord in fact entered the property and made repairs requested by the tenant. At that point, the landlord no longer needed the tenant's consent, and it would have been practically and legally meaningless for the tenant to give consent during the thirty-day "cure" period to which she was entitled after receiving the notice of eviction.[14] For the same reasons, the landlord could not satisfy a necessary element of a breach of contract claim. To prevail on a claim of breach of contract, the landlord would have to prove not only a breach of a contractual obligation, but also some type of injury resulting from the breach. *See, e.g., Entrepreneur, Ltd. v. Yasuna,* 498 A.2d 1151, 1161, 1164 (D.C.1985) (noting that "relevant to the question of forfeiture is whether any prejudice has accrued to the landlord by reason of the breach," and rejecting jury verdict in landlord's favor where breach "had been cured" by "the time this action came to trial"). As any possible breach by the tenant did not deter the landlord from accomplishing his purpose, and no injury is claimed or apparent, the jury could not have found for the landlord on this claim of breach. "Forfeiture is unnecessary here to vindicate any substantial right of the [landlord], since no damage has accrued to [him] by virtue of the [alleged] breach." *Id.* at 1164.

■ Further, we reject the landlord's argument that the trial court erred in making various evidentiary rulings that excluded testimony related to the claims that were disposed of during the pretrial hearing and in the early stages of trial. This court reviews "evidentiary decisions for abuse of discretion, and in doing so, broadly defer[s] to the trial court due to its 'familiarity with the details of the case and its greater experience in evidentiary matters.'" *Johnson v. United States,* 960 A.2d 281, 294 (D.C.2008) (citation omitted). Our review of the transcript and the evidentiary rulings cited by the landlord reveals no error of law or abuse of discretion. The trial court properly excluded evidence after landlord's counsel failed to explain how that evidence had any relevance to either issue being tried. Indeed, one colloquy of which the landlord now complains resulted in a ruling favorable to him.

■■ The landlord's brief also raises a variety of other claims that do not merit significant analysis, so we address them only briefly. The landlord has not demonstrated that the trial court was biased against him, a claim that appears to be based solely on legal rulings adverse to his position and the trial court's use of the tenant's more straightforward proposed statement of the case as a starting point for discussions during a preliminary hearing.[15] The landlord also has either mistakenly described or misread the jury verdict form, because his current argument contradicts the correct interpretation of the form he offered during closing arguments at trial. Finally, we perceive no error in the trial court's handling of a juror's announcement that the jury could overhear a

---

**14.** Moreover, the landlord claimed at trial that he had been advised by an official of the District of Columbia Housing Authority that once he had been informed of an official complaint for repairs—as the tenant made here—he was entitled to enter the premises to inspect and carry out repairs upon giving previous notice. Thus it appears that the landlord did not think he was impeded by the tenant's failure to grant him consent to enter the premises and his actions confirm that in fact he was not.

**15.** We note that the trial court did not reserve unfavorable rulings and comments for the landlord alone, and at one point told the tenant's counsel to "sit down" because he was being "discourteous" when objecting during the landlord's closing argument.

specific colloquy between the court and counsel. The colloquy pertained to a claim that was ultimately not presented to the jury, and the court remedied any error by explaining the colloquy in a non-prejudicial manner immediately upon being informed that the jury could hear the bench conference. There were no further indications that discussions at the bench were audible to the jury.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*